854 So.2d 864 (2003)
Edward Lewis BECKER
v.
Lynn B. DEAN, Individually and in His Capacity as Candidate for the Office of Councilman-at-Large (East), St. Bernard Parish, and Lena R. Torres, in her Official Capacity as Clerk of Court, etc.
No. 2003-C-2493.
Supreme Court of Louisiana.
September 18, 2003.
Issuing Opinion September 26, 2003.
*865 Sharon Marie Williams, Chalmette, Counsel for Applicant.
Richard H. Gauthier, Frank Dean Ippolito, Chalmette, Counsel for Respondent.
PER CURIAM.
Plaintiff, Edward Lewis Becker, filed this suit seeking to disqualify defendant, Lynn B. Dean, as a candidate for the office of councilman-at-large (East) for the Parish of St. Bernard in the election scheduled for October 4, 2003. Subsequent to a hearing held on August 29, 2003, the district court rendered judgment in favor of plaintiff, ordering that Lynn B. Dean be disqualified as a candidate for the office of councilman-at-large (East) for the Parish of St. Bernard and that Lena R. Torres, Clerk of Court, issue the necessary notification of the disqualification to the Secretary of State and the Commissioner of Elections as provided by law. Defendant appealed and the court of appeal affirmed the judgment of the district court. Becker v. Dean, 03-1561 (La.App. 4 Cir. 9/5/03), 852 So.2d 1290. On defendant's application, we granted certiorari, Becker v. *866 Dean, 03-2493 (La.9/12/03), 854 So.2d 338, and conducted oral arguments. For reasons that will follow at a later date, we reverse the judgments of the lower courts and find that Lynn B. Dean meets the qualifications to be a candidate for the office of councilman-at-large (East) for the Parish of St. Bernard.

Decree
The judgments of the lower courts are reversed. The candidacy of Lynn B. Dean for the office of councilman-at-large (East) for the Parish of St. Bernard is hereby reinstated.
Reversed; Candidacy Reinstated.
PER CURIAM.
This election matter presents the issue of whether plaintiff has met his burden of proving that defendant does not meet the qualifications of the office of councilman-at-large (East) for the Parish of St. Bernard. Specifically, plaintiff must prove that defendant is not a qualified elector of St. Bernard Parish and of the district or parish division for the office he seeks, or that, for at least two years immediately preceding the time established by law for qualification, defendant has not been domiciled in St. Bernard Parish, or has not actually resided in St. Bernard Parish. For the following reasons, we conclude plaintiff failed to meet his burden of proof and accordingly reverse the judgments to the contrary of the lower courts.

Facts and Procedural History
On August 21, 2003, Lynn B. Dean filed a Notice of Candidacy (Qualifying Form) for the office of councilman-at-large (East) for the Parish of St. Bernard in the election scheduled for October 4, 2003. The qualifying form contained one line for "domicile address" and one line for "mailing address, if different." On the line marked "domicile address," the candidate wrote "101 Dean Drive." On the line designated "mailing address, if different," the candidate wrote "Braithwaite, La. 70040."
On August 27, 2003, plaintiff, Edward Lewis Becker, a registered voter and duly qualified elector of the Parish of St. Bernard, filed this action seeking to disqualify defendant, Lynn B. Dean, as a candidate for the office of councilman-at-large (East) for the Parish of St. Bernard. In his petition, plaintiff alleged defendant does not meet the qualifications for the office of councilman-at-large (East) for the Parish of St. Bernard as set forth in the St. Bernard Parish Home Rule Charter, Article II, § 2.01(C), (D), and (E).[1] Specifically, plaintiff alleged that defendant is not qualified for the office at issue because he is domiciled and actually resides in Plaquemines Parish, not in St. Bernard Parish. Additionally, plaintiff alleged defendant is not qualified to run for councilman-at-large (East) for the Parish of St. Bernard because he is not a qualified elector of the parish.
Trial of this matter was held on August 29, 2003. At trial, plaintiff introduced the testimony of defendant, Mr. Daniel Baiamonte, the Safety and Permits manager for the St. Bernard Parish Government, and Mrs. Dean. The defense, in turn, introduced the testimony of Mr. Stephen Estopinal, an expert in land surveying and civil engineering, and defendant. The principal issue at trial concerned the location of defendant's domicile and actual residence within a single tract of land located in both Plaquemines and St. Bernard Parishes.
*867 Defendant testified he has been domiciled for about 32 years in a second-story apartment located directly above a building housing his business, Elevating Boats, Incorporated ("EBI"). Defendant further testified this apartment is located entirely within St. Bernard Parish. According to defendant, he and his wife vote in St. Bernard Parish and have voted in that parish for many years. Defendant's Form of Application for Registration filed in the St. Bernard Office of Registrar of Voters indicates his last registered address to be 101 Dean Drive. Defendant testified he resides in the apartment in St. Bernard Parish, as well as in other homes he owns outside of St. Bernard Parish. Defendant confirmed that he sleeps in the bed in the apartment. Defendant stated his wife "sometimes" lives in the apartment, although she sleeps there only "very rarely." Defendant identified several pictures of the interior of the apartment that depicted a kitchen containing a refrigerator, sink, stove, coffee maker, and a washer and dryer, a front room containing chairs, a sofa, and an office desk, a bedroom containing a bed, shelves, and an office desk and chair, and a rear room connected to a bathroom containing a shower, wash basin, and toilet.
Defendant stated the apartment has an address of 101 Dean Drive, Braithwaite, Louisiana. Prior to changing to this address, defendant's address was Route 1, Box 216, Braithwaite, Louisiana. Defendant explained that although Braithwaite, Louisiana is in Plaquemines Parish, his St. Bernard properties have a Braithwaite address because they are served by the Braithwaite post office. Defendant testified that the parish did not lay out Dean Drive, but that he made up the address of 101 Dean Drive at the request of either the post office or the fire department. Defendant stated that the address of the EBI building is 900 St. Bernard Parkway, Braithwaite, Louisiana. Defendant also testified that 101 Dean Drive "is a mailbox setting on St. Bernard Parkway, about 100 feet from the Parish line between it and Plaquemines Parish, all in St. Bernard Parish." Defendant explained that the EBI building and the apartment have different addresses to clarify the separate locations of the business and the apartment.
Defendant also testified that he owns a home located on the portion of the tract of land at issue that is in Plaquemines Parish. Defendant stated he and his wife sometimes reside in the Plaquemines Parish house. According to defendant's testimony and evidence introduced by plaintiff, in 1997 defendant took a homestead exemption in Plaquemines Parish on 101 Dean Drive, Braithwaite, Louisiana for tax purposes. Plaintiff also introduced a transcript of testimony given by defendant on June 1, 1998, in a lawsuit captioned Elevating Boats, Inc. v. Parish of St. Bernard, in which defendant stated he took a homestead exemption on his home in Plaquemines Parish, but did not have one at the time of his testimony in that suit. In the instant case, defendant indicated he has never taken a homestead exemption for the apartment and has not taken any homestead exemption since the one referred to above on the Plaquemines Parish house. Defendant stated the home in Plaquemines Parish does not have an address, or a "101," on it.
Plaintiff also produced the testimony of Mrs. Dean, who stated that she and defendant bought a house in St. Bernard Parish in 1961 that had an address of Route 1, Box 216, Braithwaite, Louisiana. They lived in that house for four years and then moved to the house in Plaquemines Parish. Mrs. Dean testified that she and her husband reside in the Plaquemines Parish house "most of the time." Mrs. Dean stated, *868 however, that she lives at the apartment "some," which was "[w]henever my husband wants me to live with him." She further testified she keeps some of her clothes in a closet in the apartment, food is kept in the refrigerator and in the cabinets, and she reads on the sofa in the apartment. She explained that her family celebrates holidays and special occasions in the Plaquemines Parish house and not in the apartment because they can spread out in the Plaquemines Parish house. Mrs. Dean stated that defendant goes to the apartment often to work and to watch the business because he is concerned about crime in the plant.
Finally, plaintiff produced the testimony of Daniel Baiamonte, the Safety and Permits manager of St. Bernard Parish Government. Mr. Baiamonte testified that he issues all building permits and address changes for any resident or business within St. Bernard Parish. Mr. Baiamonte stated that, to his knowledge, there is no street in St. Bernard Parish named Dean Drive. Further, he testified that no application has ever been filed to change the name of a street from something else to Dean Drive. Mr. Baiamonte identified an official listing of all private and public streets in St. Bernard Parish and stated Dean Drive does not appear on that list.
In addition to producing the testimony of defendant, the defense also presented the testimony of Mr. Steven Estopinal, an expert in land surveying and civil engineering. Mr. Estopinal identified a survey he performed that clearly shows the political boundary between St. Bernard and Plaquemines Parishes and an aerial photograph of the property at issue. Mr. Estopinal testified that the part of the building containing the apartment is located in St. Bernard Parish. He further testified that defendant's house on the same tract is located in Plaquemines Parish.
Following trial, the district court determined that 101 Dean Drive referred to the house in Plaquemines Parish, that defendant was domiciled in the house in Plaquemines Parish, and that he did not actually reside in the apartment located in St. Bernard Parish. Accordingly, the district court rendered judgment disqualifying defendant as a candidate for the office of councilman-at-large (East) for the Parish of St. Bernard.[2]
Defendant appealed, and, upon review, the court of appeal affirmed the judgment of the district court. Becker v. Dean, 03-1561 (La.App. 4 Cir. 9/5/03), 852 So.2d 1290. The court of appeal concluded that the property located at 101 Dean Drive is situated in Plaquemines Parish, not St. Bernard Parish. Furthermore, the court of appeal found defendant was not domiciled in St. Bernard Parish.[3] The court of appeal therefore concluded the district court did not err in disqualifying defendant's candidacy for councilman-at-large (East) for the Parish of St. Bernard.
Upon defendant's application, we granted certiorari to consider whether defendant is domiciled in and actually resides in St. Bernard Parish such that he may be qualified as a candidate for councilman-at-large (East) for the Parish of St. Bernard. Becker v. Dean, 03-2493 (La.9/12/03), 854 So.2d 338. Because of the expedited nature *869 of these proceedings, we issued our decree shortly after oral argument, reversing the judgments of the lower courts and reinstating defendant's candidacy. We now provide the following reasons for our ruling.

Discussion
There is nothing more fundamental to our society than the ability of our electorate to choose its leaders. The purpose of the election process is to provide the electorate with a wide choice of candidates. Williams v. Ragland, 567 So.2d 63 (La.1990). See also Roe v. Picou, 361 So.2d 874 (La.1978); Jumonville v. Jewell, 317 So.2d 616 (La.1975); Langridge v. Dauenhauer, 120 La. 450, 45 So. 387 (1908). Because encouraging qualification is an integral component of the process, laws regulating the process must be interpreted with this purpose in mind. Williams, 567 So.2d at 66. Thus, the interests of the state and its citizens are best served when election laws are interpreted so as to give the electorate the widest possible choice of candidates. See Rich v. Martin, 259 So.2d 113 (La.App. 1 Cir. 1971).
In an election contest, the person opposing the candidacy bears the burden of proving the candidate is disqualified. La. R.S. 18:492, Russell v. Goldsby, 00-2595 (La.9/22/00), 780 So.2d 1048; Dixon v. Hughes, 587 So.2d 679 (La.1991); Messer v. London, 438 So.2d 546 (La.1983). Thus, where a particular domicile is required for candidacy, the burden of proof rests upon the party objecting to the candidacy to show a lack of domicile. Pattan v. Fields, 95-2375 (La.9/28/95), 661 So.2d 1320. The laws governing the conduct of elections must be liberally construed so as to promote rather than defeat candidacy. Russell, 00-2595 at p. 4, 780 So.2d at 1051; Dixon, 587 So.2d at 680. Any doubt as to the qualifications of a candidate should be resolved in favor of allowing the candidate to run for public office. Russell, 00-2595 at p. 4, 780 So.2d at 1051; Dixon, 587 So.2d at 680.
La. R.S. 18:451, entitled "Qualifications of candidates," provides in pertinent part:
A person who meets the qualifications for the office he seeks may become a candidate and be voted on in a primary or general election if he qualifies as a candidate in the election. Except as otherwise provided by law, a candidate shall possess the qualifications for the office he seeks at the time he qualifies for that office. In the event that the qualifications for an office include a residency or domicile requirement, a candidate shall meet the established length of residency or domicile as of the date of qualifying, notwithstanding any other provision of law to the contrary....
Section 2.01 of the Home Rule Charter for St. Bernard Parish provides for the qualifications for councilman-at-large (East) as follows:
(c) One (1) councilman-at-large shall be a resident of the eastern half of the parish....
(d) All council members shall be qualified electors of the parish and of the district or parish division from which elected at the time of qualification.
(e) All council members shall have been legally domiciled and shall have actually resided in St. Bernard Parish for at least two (2) years immediately preceding the time established by law for qualifying for office.
Thus, in order for defendant to qualify for councilman-at-large (East), § 2.01(e) of the St. Bernard Parish Home Rule Charter requires that he was legally domiciled and actually resided in St. Bernard Parish for at least two years immediately preceding his qualification.
*870 In the instant case, the district court's reasons for judgment make it clear that the district court did not apply the proper legal standard when it ordered defendant disqualified as a candidate for councilman-at-large (East) for the Parish of St. Bernard. Although the district court cited the correct law and burden of proof as stated above, its reasons for judgment make it clear that it imposed upon defendant the burden of proving his domicile and actual residence were in St. Bernard Parish rather than imposing upon plaintiff the burden of proving that defendant was not qualified to run for the office. For example, the district court stated, "The apartment does not become 101 Dean Drive because Mr. Dean says it now is. He simply offers no acceptable proof to support that allegation." Plaintiff's own evidence establishes that 101 Dean Drive is the basis for defendant's current voter registration in St. Bernard Parish. It is plaintiff's burden to establish that 101 Dean Drive does not include the apartment in St. Bernard Parish. The district court, however, placed the burden on defendant to show that the apartment is located at 101 Dean Drive in St. Bernard Parish. Additionally, the district court stated that even if defendant had been domiciled in St. Bernard, "he failed to meet the second requirement of actually residing within St. Bernard. His claim of residen[ce] in the EBI apartment fails to meet the legal standard of actual residence...." It appears the district court improperly placed the burden of proving residence in St. Bernard Parish on defendant, rather than requiring plaintiff to prove defendant did not reside in the apartment in St. Bernard Parish. Because the district court committed legal error by applying the wrong legal standard, the manifest error standard of review does not apply and we must determine the facts de novo from the record. Wallmuth v. Rapides Parish School Bd., 01-1779, p. 7 n. 2 (La.4/3/02), 813 So.2d 341, 345 n. 2 ("Where the trial court commits legal error by applying an incorrect legal standard, this court is required to determine the facts de novo from the entire record and render a decision on the merits.").
The record before us makes it clear that the address 101 Dean Drive has been used to describe both the Plaquemines Parish house and the St. Bernard Parish apartment. In 1996, defendant changed his address on his voter's registration in the St. Bernard Parish Office of Registrar of Voters to 101 Dean Drive. This address appears to be the current address on file for defendant. Because defendant is registered to vote in St. Bernard Parish, 101 Dean Drive on his voter's registration form obviously refers to the apartment since defendant testified the apartment is his only residence in St. Bernard Parish. Defendant testified that the St. Bernard Parish Registrar of Voters has never challenged his ability to vote in St. Bernard Parish. In contrast, defendant received a Plaquemines Parish Homestead Exemption in 1997 for 101 Dean Drive. For purposes of the homestead exemption, 101 Dean Drive clearly refers to the home in Plaquemines Parish as the exemption was issued by the Plaquemines Parish assessor. The transcript of defendant's testimony in the Elevating Boats case reveals only that defendant testified he had a home in Plaquemines Parish for which he took a homestead exemption in at least one year. The address of the home referred to in defendant's previous testimony is not provided.
The evidence reveals that neither dwelling contains on its structure a physical address or the number "101." The record in this case reveals only that the address 101 Dean Drive appears on the property on a mailbox situated in St. Bernard Parish. Although plaintiff presented testimony *871 that Dean Drive does not officially exist in St. Bernard Parish records, the physical evidence is to the contrary. Obviously, Dean Drive exists at least as a mailing address for postal purposes since a photograph in evidence shows several mailboxes next to the one marked "101 Dean Drive" that contain the designations 103 Dean Drive, 105 Dean Drive, and 107 Dean Drive.
Defendant unequivocally testified that the apartment in St. Bernard Parish is located at 101 Dean Drive. In light of the conflicting evidence presented, we cannot find that plaintiff proved 101 Dean Drive refers solely to the Plaquemines Parish house. Because plaintiff did not prove the domiciliary address on defendant's qualifying form is not located in St. Bernard Parish, we turn now to the issue of whether plaintiff proved defendant was not legally domiciled at the St. Bernard Parish apartment.
It is well settled that the terms residence and domicile are not synonymous, and, while a person can have several residences, he can have only one domicile. La. C.C. art. 38; Russell, 00-2595 at p. 5, 780 So.2d at 1051; Messer v. London, 438 So.2d 546 (La.1983). An individual's domicile is the principal establishment wherein he habitually resides. Russell, 00-2595 at p. 5, 780 So.2d at 1051. Domicile consists of two elements, residence and intent to remain. Id. The question of domicile is one of intention as well as fact, and where it appears domicile has been assumed in another location, the party seeking to show it has been changed must overcome the legal presumption that it has not been changed. Id. The opposing party must overcome this legal presumption "by positive and satisfactory proof of establishment of domicile as a matter of fact with the intention of remaining in the new place and of abandoning the former domicile." Id. When there is no declaration that a person has changed his domicile, proof of his intention depends upon circumstances. Id. There is a presumption against change of domicile. Id.
Defendant first registered to vote in St. Bernard Parish on December 12, 1962. Defendant's testimony that he has was legally domiciled in the apartment in about 1968 or 1972 is uncontroverted. Defendant testified that it has been his intention to retain the apartment as his domicile since that time. While it is true defendant has resided in several other homes, some in St. Bernard Parish and some in other parishes, plaintiff produced no evidence indicating defendant intended to abandon his domicile at the apartment in favor of any other residence. Defendant explicitly testified that he has been domiciled in the apartment for about 32 years. Additionally, he testified that while he bought a residence in Chalmette in 1991 when he was St. Bernard Parish President, he continued to be domiciled at the apartment. This testimony of defendant's intent is corroborated by the fact that defendant ceased to claim a homestead exemption in Plaquemines Parish when a new law took effect in 1998 requiring a person to register and vote in the precinct where property upon which a homestead exemption is claimed is located. We therefore find plaintiff failed to prove defendant intended to change his domicile to a location outside St. Bernard Parish at any time after 1972.
The next issue presented is whether plaintiff proved defendant had not "actually resided" in the St. Bernard Parish apartment for at least two years immediately preceding his qualification for the office of councilman-at-large (East) for the Parish of St. Bernard. This court has not previously interpreted the phrase "actually resided" as it is used in § 2.01(e) of the St. Bernard Parish Home Rule Charter.
*872 However, as used in La. Const. art. III, § 4(A) in connection with the qualifications of candidates for the legislature, the phrase "actually domiciled" requires "that the person seeking to hold legislative office must have a `real rather than fictitious domicile in the area represented.'" Russell, 00-2595 at p. 6, 780 So.2d at 1052 (quoting Messer, 438 So.2d at 547). In Russell, this court applied the interpretation of the term "actually domiciled" to the phrase "actually resided" in La. R.S. 33:384, and determined that the inquiry of whether someone "actually resides" in a particular place should focus on whether plaintiff established that the residence at issue is a fictitious residence rather than a real residence. Because the St. Bernard Parish Home Rule Charter uses the phrase "actually resided" in a context virtually identical to that in La. R.S. 33:384 and interpreted in the Russell case, we will apply the same standard to the facts of this case. Accordingly, the pertinent inquiry is whether plaintiff established that defendant's apartment is a fictitious residence rather than a real residence.
Defendant testified he resides in the apartment at different times, depending on the time and date. The record establishes that defendant eats, sleeps, and works at the apartment. The apartment contains all the modern requirements for everyday living, including a refrigerator with food in it, sink, stove, bed, chairs, washer, dryer, shower, toilet, and lavatory. Defendant's wife sometimes lives in the apartment with him and keeps clothes there. Although there was testimony that defendant spends the majority of his time in the home in Plaquemines Parish, there is no evidence that defendant intended to abandon the apartment as his actual residence merely because he spent less time there. See Russell, 00-2595 at p. 7, 780 So.2d at 1052. As we explained in Russell, "[c]ourts must be cognizant of the realities of modern life, in which the demands of a career and other factors often require people to spend a large amount of time at different locations." Id. Nothing in § 2.01(e) of the St. Bernard Parish Home Rule Charter prevents a candidate for councilman-at-large (East) from having several actual residences. Instead, the Charter provision focuses on whether the residence is in fact an actual, rather than a fictitious, residence. Based upon the record before us, we must conclude that plaintiff has failed to prove the St. Bernard apartment is merely a fictitious residence.
Finally, subsection (d) of § 2.01 of the St. Bernard Parish Home Rule Charter requires that a council member "shall be qualified electors of the parish and of the district or parish division from which elected at the time of qualification." The record contains absolutely no evidence that defendant is not a qualified elector as required by this section.
We recognize that the record does not contain irrefutable, conclusive proof that defendant is both domiciled in and actually resides in the St. Bernard Parish apartment. However, such proof is not required to be in the record in this case. Rather, what is required is that plaintiff prove that defendant is not domiciled in the apartment, that he does not actually reside in the apartment, or that he is not a qualified elector of St. Bernard Parish and of the district or parish division for the office he seeks. Such proof was simply not sufficiently presented in the instant case. As explained above, any doubt as to the qualifications of a candidate must be resolved in the candidate's favor so that he is permitted to run for public office. This policy furthers the interests of both the state and her citizens by giving the electorate the widest possible choice of candidates. Because we cannot find that defendant did not meet the qualification *873 requirements for the office of councilman-at-large (East) of St. Bernard Parish, the instant case presents a situation in which this policy must be applied.
For all of the above reasons, we find that defendant, Lynn B. Dean, meets the qualifications to be a candidate for the office of councilman-at-large (East) for the Parish of St. Bernard. Accordingly, the judgments of the lower courts to the contrary are reversed.

Decree
For the reasons assigned, the judgments of the lower courts are reversed. The candidacy of Lynn B. Dean for the office of councilman-at-large (East) for the Parish of St. Bernard is hereby reinstated. All costs in this court are assessed to plaintiff.
Reversed; Candidacy Reinstated.
CALOGERO, C.J., and WEIMER, J., dissent and assigns reasons.
TRAYLOR, J., dissents for the reasons assigned by WEIMER, J.
CALOGERO, Chief Justice, dissenting.
For the period January 1, 1984, to August 31, 1994, when defendant, Lynn B. Dean, preferred to pay the lesser sales tax on his business transactions to Plaquemines Parish, rather than St. Bernard Parish, he took the position that his business, Elevating Boats, Inc. ("EBI"), as well as his residence were in Plaquemines Parish, notwithstanding the fact that the EBI building and the apartment atop that structure were actually located in St. Bernard Parish. See Elevating Boats, Inc. v. St. Bernard Parish, XXXX-XXXX (La.9/5/01), 795 So.2d 1153.
On August 21, 2003, when Mr. Dean qualified to run for the office of councilman-at-large for St. Bernard Parish, he claimed that he had actually resided for a number of years in the apartment atop the EBI business in St. Bernard Parish. The district court judge and the court of appeal in this case, on the strength of all the evidence in the record, determined that Mr. Dean did not meet the qualifications for the office of councilman-at-large as set forth in St. Bernard Parish Home Rule Charter § 2-01(E), which requires that "[a]ll council members shall have been legally domiciled and shall have actually resided in St. Bernard Parish for at least two (2) years immediately preceding the time established by law for qualifying for office."
Two lower courts correctly found on the basis of the record evidence that Mr. Dean had not been both a legal domiciliary and an actual resident of St. Bernard Parish for at least two years immediately prior to the date of qualifying for office. I agree with those findings. Accordingly, I dissent.
WEIMER, Justice, dissenting.
I agree with the premise that fundamental to our system of democracy is the right of our citizens to choose their leaders. The purpose of the election process is to provide citizens with an opportunity to chose their representatives and, in this regard, it is beneficial to have a choice of candidates. I acknowledge that, in accordance with the above principles, laws governing the conduct of elections must be liberally interpreted so as to promote rather than defeat candidacy. Any doubt as to the qualifications of a candidate should be resolved in favor of permitting the candidate to run for office. Russell v. Goldsby, 00-2595 (La.9/22/00), 780 So.2d 1048, 1051. However, while promoting candidacy is unquestionably a laudable goal, this goal cannot be achieved at the expense of rendering the words of a provision meaningless. Underlying policy cannot supercede the clear language of the law.
*874 The Home Rule Charter for St. Bernard Parish is the fundamental law of the parish government for the people of St. Bernard. Article II, Section 2.01(e) of the St. Bernard Parish Home Rule Charter sets forth mandatory requirements for the office of councilman-at-large:
All council members shall have been legally domiciled and shall have actually resided in St. Bernard Parish for at least two (2) years immediately preceding the time established by law for qualifying for office. [Emphasis added.]
The charter requires a candidate to be "legally domiciled" and to have "actually resided" in the parish and division to be represented. Thus, the charter establishes two requirements which must be met by a candidate. Failure to meet either requirement can result in the candidate being disqualified.[1] In this case, the trial court concluded that Senator Lynn B. Dean[2] satisfied neither of the two requirements. The court of appeal focused on the "legally domiciled" requirement finding he failed to satisfy that requirement.
As to the "actually resided" requirement,[3] the trial court noted that, pursuant to this court's decision in Russell, supra at 1052, actually resided requires "a real residence, not a fictitious residence simply designed to circumvent the residency requirements."
The obvious purpose of the charter in requiring a candidate to have "actually resided" in St. Bernard is to make certain that those who serve on the parish council have actually resided within the boundaries of the parish. This provision prohibits those who fictitiously reside, as opposed to those who have actually resided in the parish, from serving on the council. It is not enough to simply establish a "residence" within the parish. The charter requires the candidate to have "actually resided" within the parish.[4] The word "actually" modifies "resided." "Actually" is defined as "the truth or facts of a situation; really." THE NEW OXFORD AMERICAN DICTIONARY 16 (Elizabeth J. Jewell & Frank Abate eds., 2001). The combination of the two requirements, coupled with the adverb "actually" modifying "resided," makes it abundantly clear that to be a candidate an individual must not only intend to make St. Bernard Parish his home, but also must actually reside there physically.
The trial court concluded that the apartment in which Mr. Dean claims to "actually reside" is in fact a fictitious residence, based on the following:
The apartment is located less than one block from Mr. and Mrs. Dean's primary residence. It is spartan at best. It is abundantly clear that the sole purpose of this apartment is to establish a residence for political purposes in St. Bernard.... There was absolutely no testimony of any other need for the residence except to establish a residence for political purposes. This evaluation of actual residence is not aided by Mr. Dean's continued testimony that he resides *875 wherever his skin is located because he lives in his skin. That answer certainly shed doubt in the Court's mind as to what he meant when he claims to actually reside at the apartment at EBI. It is additionally pointed out that despite Mr. Dean asserting the apartment is his it is actually owned by EBI. There is absolutely no testimony of any lease or rental agreement by EBI allowing Mr. Dean the exclusive use of the property. That simply is not enough to satisfy the charter requirements of actual residence.
The trial court's ruling that Mr. Dean does not meet the "actually resided" requirement of the home rule charter is based on factual findings made by the trial court. Whether a person is or is not a resident of a particular place is a question of law and fact and is to be determined from the facts of each particular case. Gedward v. Sonnier, 98-1688 (La.3/2/99), 728 So.2d 1265. A logical rule restraining courts of review, such as this court, is that a trial court is reversed on factual determinations only if manifestly erroneous or clearly wrong. Lasyone v. Kansas City Southern Railroad, 2000-2628 (La.4/3/01), 786 So.2d 682; Stobart v. State, Department of Transportation and Development, 617 So.2d 880 (La.1993). This rule assures parties that the facts of their case will not be tried on the transcript or "cold record" filed in this court but rather before a fact finder who can evaluate the live testimony.
The majority attempts to circumvent the constraints of the manifest error rule by concluding that the trial court applied an incorrect legal standard. In reaching this conclusion, the majority expressly acknowledges that the trial court cited the correct law and burden of proof in its reasons; the majority simply accuses the court of not applying that law as recited. To support the accusation, the majority excerpts a single sentence from the lengthy reasons assigned by the trial court.[5] That sentence, however, reflects not that the trial court impermissibly shifted the burden of proof to the defendant, but rather reflects that the trial court did not accept the defendant's evidence. The trial court's statement simply points out that the defendant failed to present any evidence that would corroborate his testimony although that evidence was within the defendant's control. The trial court comments on his testimony and explains the court's reasons for rejecting that testimony, but it does not impermissibly shift the burden of proof to the defendant. When the reasons assigned by the trial court are read in their entirety, it is clear that the trial court applied the law as recited and simply rejected the defendant's testimony. In fact, to read the majority opinion, and the conflicting and confusing explanation afforded for the Dean Drive address, is to understand why the trial court chose not to credit the defendant's testimony.[6] Based on the entirety of the *876 evidence presented, the trial court was justified in doing so.
The findings of fact and the logical conclusions to be drawn from those facts stand unrefuted by the majority, which simply accepts the defendant's testimony. However, it is the province and obligation of the trial court to find the facts in the first instance, and the majority has not, nor can it, demonstrate clear error in the factual findings and credibility determinations of the trial court.
In law, as in life, boundaries have to be drawn.[7] The law often imposes boundaries. The boundary between the parishes of Plaquemines and St. Bernard, an artificial line, imperceptibly and infinitely thin, nevertheless establishes a legal boundary.
Senator Dean may appropriately consider himself a citizen of St. Bernard in heart and soul. He has served the people of both Plaquemines and St. Bernard Parish in the State Senate. He previously served the people of St. Bernard on the School Board for a decade and as President of St. Bernard Parish. However, the boundary line between the parishes governs whether he is a candidate.
Constrained by the manifest error rule, I cannot find the trial court erred.
NOTES
[1] Pursuant to La. R.S. 18:1402(A)(2), Lena R. Torres was named a nominal defendant in her official capacity as Clerk of Court for the Thirty Fourth Judicial District Court for the Parish of St. Bernard.
[2] The district court's judgment also ordered Lena R. Torres, Clerk of Court for the Thirty-Fourth Judicial District Court, to notify "according to law the Secretary of State and the Commissioner of Elections that Lynn B. Dean has been disqualified as a candidate for the office of Councilman-at-large (East) for the Parish of St. Bernard."
[3] Based on this finding, the court of appeal determined it was unnecessary to address the issue of whether defendant maintained an "actual residence" in St. Bernard Parish.
[1] This court implicitly recognized two requirements in Russell, supra, which involved LSA-R.S. 33:384, a provision listing "domiciled and actually resided" as qualifications for mayor.
[2] Senator Dean serves District 1 in the Louisiana Senate.
[3] The "legally domiciled" requirement can be pretermitted if the "actually resided" requirement is not met.
[4] In his concurrence in Russell, supra note 1 at 1053, Justice Lemmon pointed out, "I further agree that the statutorily required actual residence is one that is not a fictitious residence, such as an office in which the candidate keeps a bed and some clothes."
[5] A judgment and reasons for judgment are two separate and distinct documents. LSA-C.C.P. art.1918. Appeals are taken from the judgment, not the written reasons for judgment. McCalmont v. Jefferson Parish Sheriff's Office, 99-940, p. 6 (La.App. 5 Cir. 1/12/00), 748 So.2d 1286, 1290, writ denied, XXXX-XXXX (La.4/20/00), 760 So.2d 1160. See Cenac v. Public Access Water Rights Association, 02-2660 (La.6/27/03), 851 So.2d 1006, Weimer, J. dissenting in part.
[6] The majority notes at page 870:

The record before us makes it clear that the address 101 Dean Drive has been used to describe both the Plaquemines Parish house and the St. Bernard Parish apartment... [D]efendant received a Plaquemines Parish Homestead Exemption in 1997 for 101 Dean Drive. For purposes of the homestead exemption, 101 Dean Drive clearly refers to the home in Plaquemines Parish as the exemption was issued by the Plaquemines Parish assessor.
[7] Paraphrasing Justice Felix Frankfurter in Pearce v. Commissioner of Internal Revenue, 315 U.S. 543, 558, 62 S.Ct. 754, 86 L.Ed. 1016 (1942).