939 So.2d 568 (2006)
STATE of Louisiana, Plaintiff-Appellant
v.
Ricky Don PEARSON, Defendant-Appellee.
No. 41,812-CA.
Court of Appeal of Louisiana, Second Circuit.
September 8, 2006.
Writ Denied September 13, 2006.
*569 Walter E. May, Jr., District Attorney, Tammy L. Gantt Jump, Assistant District Attorney, for Appellant.
Chris L. Bowman, Jonesboro, Ronald J. Miciotto, Shreveport, for Appellee.
Before WILLIAMS, GASKINS, PEATROSS DREW & LOLLEY, JJ.
PEATROSS, J.
This is an election contest in which the district attorney for Bienville Parish, pursuant to the provisions of La. R.S. 18:491(B), objected to the candidacy of defendant, Ricky Don Pearson, for Chief of Police of the Town of Arcadia. The petition to disqualify asserted that Pearson failed to meet the qualifications for office because he was not a domiciliary of the Town of Arcadia as required by law. Following trial, the district court rejected the attempt to disqualify and this timely appeal followed. For the following reasons, we reverse.

FACTS
The following facts are undisputed. Pearson moved to Bienville Parish from Georgia in July 2005. Pearson's mother, who was not in good health, lived at 776 Crawford Road outside the city limits of Arcadia. She lived at that address with her father who was over 100 years old, and Pearson spent a significant amount of time at the Crawford Road address taking care of his mother and grandfather. He had that address put on his driver's license. Shortly after moving back, he spoke to his cousins, Terrence and Jerrod Smith, about moving into a three-bedroom house which they leased at 1186 Parkwood Street inside the city limits of Arcadia. They also discussed having Pearson's name put on the lease, and Pearson's name was placed on the water bill for the house, but, apparently, not until 2006. Pearson had mail sent to that address, and on September 15, 2005, he used that address when he registered to vote. Pearson's cousins were deployed *570 to New Orleans in August 2005 in connection with Hurricane Katrina and did not return until February 2006. Pearson's name was never added to the lease. Pearson filed his notice of candidacy for police chief on August 9, 2006, listing 1186 Parkwood Street as his domicile.
There was conflicting testimony concerning indicia of Pearson's residency at the Parkwood Street address. When Terrence Smith was asked whether Pearson lived at 1186 Parkwood Street, he responded: "No, he doesn't." When asked if Pearson had personal belongings there, he responded: "Not as of now, no, has been." He was then asked when Pearson did have personal belongings there, and he answered that it was "a while back." Smith indicated that Pearson had spent the night at that address, but he could not remember a specific date; he could only recall that the last time was during the spring of 2006. He also indicated that when Pearson did stay, "it wouldn't be long." Smith was asked where Pearson was living at that time, to which Smith replied: "I have[n't] the slightest idea." According to Smith, Pearson had not paid rent and had not paid utilities. He had "offered to pay" the water bill, but had not paid it. Smith admitted not living in the house from late August 2005 until February 2006, and Smith also indicated that for the two months prior to the trial Smith had been staying with a friend rather than living in the house.
Pearson's other cousin, Jerrod Smith, testified that Pearson received some of his mail at the Parkwood Street address. As to how Pearson got his mail after it came to the house, Jerrod stated: "I brought it to him a couple of times and he, uh, he came over there and picked it up, too." Smith confirmed that he and his brother paid the water and the electricity bill there, and he indicated that he was unaware that Pearson's name was on the bill "until like three or four months ago." According to Jerrod Smith, Pearson had never stayed with the brothers. When specifically asked whether Pearson had spent the night "or anything like that," Jerrod Smith responded in the negative. He also indicated that Pearson did not eat any meals there and that to Smith's knowledge Pearson had no personal belongings there. However, Jerrod Smith admitted that he had been absent from the house from late August 2005 through February 2006 and did not know what had occurred at the house during that time. He acknowledged that upon returning from New Orleans the house was not like the brothers had left it, but knew his sister had asked to stay and did stay there "a couple of nights" while they were gone. Smith responded in the negative when asked if there was anything in the house that would show that Pearson was the one who stayed at the house. Like his brother, Jerrod Smith indicated that Pearson was welcome to stay in the home anytime. When asked if he had any knowledge as to where Pearson stayed, he replied: "Uh, as far as I know with his mother."
Other than Isadore Millican, a resident of 1138 Parkwood Street whose testimony added little if anything of value toward resolving the issues, the only other witness to testify was Pearson himself. Without question, his testimony was evasive at best and unresponsive at worst. When asked by counsel for the state if it was his testimony that he had been staying at the Parkwood address, the following colloquy ensued:
A: It's my testimony that I hadthat was my residence.
Q: That's not what I asked you.
A: Well, that's my answer.
Q: Did you sleep there?
A: That was my residence.

*571 Court: Please answer the question.
A: I plead the Fifth.
After Pearson's counsel talked to him off the record, the questioning continued:
Q: My question was do you sleep at your. . . .
A:. . . . that was my residence.
Q: So you're not going to tell me whether you sleep at 1186 Parkwood Street?
A: That's my residence.
Q: Do you shower at 1186 Parkwood Street?
A: That is my residence.
Q: Do you eat your meals there?
A: That is my residence.
Q: Do youis any of your stuff there like clothes, anything like that?
A: That's my residence.
Q: Do you receive mail there?
A: That is my residence.
When asked how often he stayed at the Crawford Road address, he responded "as often as my mother would have me." When asked how often he went out of town in connection with his jobs, he responded "as often as I'm called."
Pearson's testimony later in the trial concerning residence at the Parkwood address was slightly more revealing, but evasive. He admitted that he had not stayed at the Parkwood Street address within the last month, but stated he could not remember whether he had stayed there within the last two months. He indicated that he had two bank accounts, one with the Parkwood Street address, and one with the Crawford Road address. With respect to the water bill at the Parkwood Street address, he testified that he had "paid some on this bill." He testified that it was his intent to remain permanently at the Parkwood Street address and to make that address his domicile. He also testified that he had received mail there since the latter part of July 2005.
When the subject of the number of nights spent at the Parkwood Street address was again visited by counsel for the state after Pearson's motion for involuntary dismissal has been denied, Pearson testified that he had slept at the address within the last year, but could not recall how many times. Similarly, he indicated that he had eaten there in the last year, but could not recall how many times.
At the end of the trial, the trial court gave oral reasons for judgment. After recounting the evidence and testimony presented, and adverting to the distinction between domicile and residence, the trial court stated that it was not convinced that Pearson intended to have his domicile with his elderly mother and grandfather. Instead, the trial court believed that Pearson's intent was to have his domicile at the Parkwood Street address. The trial court had no doubt that Pearson was domiciled "somewhere in Bienville Parish," and under the circumstances, the trial court concluded that "the best we can determine is that it's the 1186 address." Accordingly, the trial court rejected the challenge to Pearson's candidacy; the district attorney then filed a timely appeal.

DISCUSSION
Under the provisions of La. R.S. 33:385.1 concerning qualifications of an elected chief of police, Pearson was required to be an elector in the Town of Arcadia; furthermore, at the time of qualification as a candidate for the office of chief of police, he had to have been domiciled for at least the immediately preceding year in the municipality. The use of the term "domicile" in the statute is significant because, while a person can have several residences, he can have only one domicile. Becker v. Dean, 03-2493 *572 (La.9/18/03), 854 So.2d 864. Domicile is general defined in La. C.C. art. 38 which provides:
The domicile of each citizen is the parish wherein he has principal establishment. The principal establishment is that in which he makes habitual residence; if he resides alternately in several places, and nearly as much in one as in another, and has not declared his intention in the manner hereafter prescribed, any one of the said places where he resides maybe considered as his principal establishment, at the option of the persons whose interests are thereby affected.
In Landiak v. Richmond, 05-0758 (La.3/24/05), 899 So.2d 535, the Louisiana Supreme Court also quoted Article 38 when discussing domicile in an election case. The court noted that when a party has not declared his intention as to domicile under La. C.C. art. 43, proof of a person's intention regarding domicile depends on the circumstances. In discussing relevant factors bearing on the determination of domicile in fact, the Louisiana Supreme Court stated:
Since domicile is generally defined as residence plus intent to remain, a party's uncontroverted testimony regarding his intent may be sufficient to establish domicile, in the absence of any documentary or other objective evidence to the contrary. . . . However, in the absence of a formal declaration, when documentary or other objective evidence casts doubt on a person's statements regarding intent, it is incumbent on courts to weigh the evidence present in order to determine domicile in fact. Otherwise, the legal concept for domicile is meaningless and every person would be considered legally domiciled wherever he says he is domiciled.
The supreme court also stated in Landiak that domicile is an issue of fact that must be determined on a case-by-case basis, and that any doubt concerning the qualifications of a candidate should be resolved in favor of allowing the candidate to run for public office. We also note that as an appellate court, we must give great deference to the trial court's factual findings based on credibility judgments. Rosell v. ESCO, 549 So.2d 840 (La.1989).
As previously noted, the trial court herein had no doubt that Pearson was domiciled in Bienville Parish, and the court concluded that Pearson's intent was to be domiciled at the Parkwood Street residence. Furthermore, the trial court concluded with respect to domicile in fact that "the best we can determine is that it's the 1186 address."
Even when we give proper deference to the trial court's judgment herein, we must disagree that Pearson's domicile in fact was the Parkwood Street residence. Though we find no manifest error in the trial court's conclusion that Pearson intended to be domiciled at the Parkwood Street residence, we hold that the trial court clearly erred in concluding that Pearson actually resided at that address for at least the year immediately preceding the time of his qualification as a candidate for the Office of Chief of Police.
In light of the evidence discussed above, there can be no doubt that Pearson did not have his principal establishment at the Parkwood Street residence. To the contrary, his uncooperative, evasive answers did little to rebut the prima facie case for disqualification made by the district attorney. Even when we view his testimony in the light most favorable to his claim of domicile, we cannot ignore the fact that Pearson could not or would not tell the court how often he had spent the night or taken meals at the Parkwood Street residence in the preceding year. At the same time, both Smith brothers testified that at *573 the time of the trial, Pearson was not living at the Parkwood Street residence, and the brother who was present at that residence since returning from New Orleans in February testified unequivocally that Pearson did not live there during that time. Both brothers agreed that Pearson did not have any belongings at that residence; one brother indicated Pearson had never had any belongings there, while the other indicated that he had not had personal belongings at the residence "for a while." With regard to nights spent and belongings present, Pearson's testimony did not establish either what kind of personal belongings he may have had at the residence at any time, or when he spent any night at the residence, other than within a one-year time frame.
By his own admission, he had not spent the night there in at least a month, and considering both Smith brothers' testimony together, the last day upon which he may have spent a night at the residence was in spring 2006. However, the election law does not require Pearson to simply have been domiciled in Arcadia at some time during the preceding year; the law requires Pearson to be domiciled there for at least an entire year prior to the time of qualification. Significantly, one cannot have domicile without residence, and, as we stated in Reeves v. Johnson, 36,837 (La.App. 2d Cir.9/11/02), 824 So.2d 1277, at the very least, one must retain minimal indicia of living at an abode in order to legitimately say that one is residing there.
The overwhelming weight of the evidence in this case is that Pearson's principal establishment was at 776 Crawford Road, outside the city limits of Arcadia. It was there that he made his habitual residence. Furthermore, his testimony did not establish that for several months immediately preceding his qualification as a candidate he spent a single night at the Parkwood residence or had any belongings at the residence. Nor did the testimony of the Smith brothers establish such indicia of residence. Instead, as previously noted, one brother testified Pearson never resided there at all. Nor does it appear that Pearson ever paid one penny in rent at the residence, ever paid an electric bill, or made more than perhaps one payment on the water bill. The only tangible connection between Pearson and the Parkwood Street address was that he had mail sent there. However, even then, his cousin's testimony was that Pearson either came to pick the mail up, or that the cousin took the mail to him. Pearson's voter registration and candidacy form, both giving the Parkwood Street address, are evidence of an intent to live there, but not of actual physical habitation.
Finally, we note that appellee assigned as error the trial court's dismissal of his motion to dismiss. That motion was based on the argument that when this matter came on for hearing on September 1, 2006, the time delay set forth in La. R.S. 18:1409 had expired. Appellee asserts that these time limitations are mandatory and that there is no provision for any suspension of those delays for any reason. We disagree.
This is an unusual case in which all judges in the judicial district recused themselves, and an ad hoc judge had to be appointed by the Louisiana Supreme Court. We also note that Mr. Pearson himself, on August 28, 2006, requested and received a continuance from the trial court. At that time, counsel for the state had noted the expeditious nature of the election statute and suggested that Mr. Pearson waive any complaints as to delay that might arise; the trial court stated its belief that Mr. Pearson had waived that complaint by filing the motion for a continuance, and Mr. Pearson did not make any statement to the contrary.
*574 We further note that appellee relies on the case of Mayeux v. Stevens, 96-1101 (La.App. 3d Cir.8/7/96), 678 So.2d 82, in which an appellate court held that a trial court's failure to set a hearing within four days of filing a disqualification petition was chargeable to the plaintiff. However, in that case the plaintiff had filed a successful motion to vacate an initial judgment where no attorney had been appointed to represent the defendant. The appellate court stated that the motion was filed after plaintiff presumably was aware that the judge did not hold the first proceeding in a timely manner. The appellate court concluded that the plaintiff was involved in the fixing of at least the second hearing to the extent that he should be held responsible for the untimely fixing. The facts of the instant case are dissimilar; we find them much more similar to our decision in Scoggins v. Jones, 442 So.2d 1202, where a clerk of court failed to timely file the record in the appellate court in an election contest case. We held that the duty to timely file the record in the appellate court was that of the Clerk of Court for the District Court and the failure of that official to do so was not chargeable to the appellant. Furthermore, no prejudice to the defendant was shown because of the failure. The same reasoning applies in this case; accordingly, appellee's argument on this point is rejected.

CONCLUSION
For the reasons set forth above, we hereby reverse the trial court's decision and hold that Ricky Don Pearson is not qualified to seek the Office of Chief of Police of the Town of Arcadia. Costs are assessed to appellee.
REVERSED AND RENDERED.