DENNIS R. BAGNERIS, SR., Judge.
I,This is an election contest suit. Plain-tiffiappellant, Roxanne Toups, appeals the trial court’s decision which denied her petition to disqualify Dr. Neil Wolfson as a candidate for Plaquemines Parish Coroner. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
On September 17, 2015, Ms. Toups filed a petition objecting to the candidacy of Dr. Wolfson. The petition alleged that Dr. Wolfson did not meet the residency qualifications as outlined in La. R.S. 13:5704. That statute provides:
' 13:5704. Qualifications.
A. The coroner shall be a physician licensed . by the Louisiana State Board Of Medical. Examiners to practice medicine in the State of Louisiana. , This requirement shall be waived in any parish in which no licensed physician qualifies to run for the office.
B. The coroner shall be a resident of . the parish. However, a licensed physician who is not a resident of the parish but who maintains a full-time medical practice at a principal medical office facility in the parish may qualify for hold the office, (emphasis added)
Ms. Toups represented that Dr. Wolfson does not meet the residency requirements for Plaquemines Parish Coroner because 1) he is domiciled in Jefferson Parish; 2) |2his full-time medical practice, Forensic Services, LLC, is located at the same address as his Jefferson Parish domicile; and 3) he does not maintain a “full-time medical practice at a principal medical office facility” in Plaquemines Parish.
At trial, Dr. Wolfson acknowledged that his domicile was Jefferson Parish. However, he testified that he maintains a full-time medical practice in Plaquemines Parish as the Chief Medical Officer for the Plaquemines Parish Sheriffs Office (hereinafter, “PPSO” ■ or “Sheriffs Office”), a position he has held for approximately ten years. His patients include employees of the PPSO, their families, prisoners, and the general public. Dr. Wolfson’s office encompasses two rooms inside the PPSO building and a trailer located behind the lock-up facility where he examines, treats, and prescribes medication for his patients. *1161 He said that each location contains medical equipment and devices. Dr. Wolfson’s contract with the PPSO requires him to see patients at least once a week; however, he testified that that he generally works roughly 20 hours per week and is on 24-hour call. Dr. Wolfson stated that the PPSO provides him with a cell phone. He equated the time he spends in his current practice with the Sheriffs Office to the hours he worked when he was in private practice.
On examination by Ms. Toups’ counsel, Dr. Wolfson admitted that he has an ownership interest in Forensic Services. He clarified that it is a medical/legal consulting business; however, he averred he no longer does consulting work. Dr. Wolfson also admitted that he reviewed Medicare claims for Humana, Inc.; moreover, he acknowledged that he had described Hu-mana as his full-time employer and the PPSO as his part-time employer in a Sworn Ethics Statement. Dr. Wolfson conceded that his registered address for his Louisiana State Board Medical Examiners license was his Jefferson Parish domicile. However, he | ^claimed he only used his Jefferson Parish address to receive mail. Dr. Wolfson denied conducting a medical practice from his Jefferson Parish residence or that he engaged in a medical practice for Humana. He steadfastly maintained that his only medical practice was with the Sheriffs Office in Plaque-mines Parish. Dr. Wolfson classified his practice as family medicine.
Lisa Enclade, a medical supervisor with the PPSO, testified that she worked under Dr. Wolfson’s supervision. She advised that Dr. Wolfson supervised another nurse at the trader office location. She verified Dr. Wolfson’s account of the medical services he offered. Ms. Enclade attested that Dr. Wolfson probably saw about thirty or forty patients per week. She also identified photographs of patient file cabinets contained within the PPSO Main Street office.
Michael LaFrance, the Deputy Chief of the' Sheriffs Office, also verified Dr. Wolf-son’s status with the PPSO and the scope of the medical care offered. He stated that Dr. Wolfson hád also treated him and that a staff was provided to assist'Dr. Wolfson.
Monica Nicosia, the Chief Deputy Tax Collector for the PPSO, testified that Dr, Wolfson has a contract with the Sheriffs Office. She said the PPSO paid for Dr. Wolfson’s cell phone and that Dr. Wolfson was on 24-hour call. Ms. Nicosia also testified the PPSO paid for Dr. Wolfson’s medical malpractice insurance.
Dr. Wolfson also admitted into evidence the business card issued by the PPSO, which identifies him as its chief medical officer, his Controlled Dangerous Substance License issued by the Louisiana Board of Pharmacy, and his prescription pad. His license and his prescription pad identify the 300 Main Street address in Belle Chasse as his office.
14At the conclusion of the trial, the trial court asked the parties to submit briefs to define what constitutes a. “principal medical office” under La. R.S. 13:5704(B).
Ms. Toups argued that it was difficult to imagine that the trailer or the small offices within the PPSO could be characterized as a principal office medical facility. She added that Dr. Wolfson’s visit with par tients once a week should not qualify as a full-time medical practice. Ms. Toups also noted that most of Dr. Wolfson’s income was derived from investments, his claims review position at Humana, social security benefits, and disability policy benefits. She contended his income sources underscored that he was not a full-time employee of the Sheriffs Office.
*1162 Dr. Wolfson countered that the evidence clearly established that he maintained a full-time medical practice with the PPSO. He cited his work hours, the scope of the medical services offered, and the number of potential patients within his patient pool. Dr. Wolfson argued the type of practice that he maintained was in line with the spirit of the qualifications imposed by La. R.S. 13:5704, that is, for a candidate for coroner to maintain his principal medical practice in the parish of the people he wished to serve as coroner.
After review of the post-trial briefs, the trial court denied the objection to Dr. Wolfson’s candidacy. The denial was based on “the uncontroverted evidence that he maintained a full-time medical practice at a principal medical office facility located in Plaquemines Parish.”
This appeal followed.
LAW/DISCUSSION
Ms. Toups’ assignments of error contend that the trial court erred because Dr. Wolfson failed to rebut her prima facie case that he did not meet the 1 (¡qualifications to run for Plaquemines Parish Coroner; and erred as a matter of law in its application of the statutory qualifications for coroner.
Our jurisprudence is well-established that for an appellate court to reverse a fact finder’s determinations, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court; and the appellate court must further determine that the record establishes that the finding is clearly wrong. Darnell v. Alcorn, 99-2405, p. 6 (La.App. 4 Cir. 9/24/99), 757 So.2d 716, 719. See also Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993).
In the present matter, Dr. Wolfson presented evidence to show he worked as the Chief Medical Officer for the PPSO and provided medical treatment to residents of the parish from his offices located within the parish. Dr. Wolfson also testified that his only medical practice was with the Sheriffs Office. This evidence provided a reasonably sufficient basis for the trial court to conclude that Dr. Wolfson had rebutted any prima facie presumption that he was unqualified to run for coroner. Accordingly, we find no merit to this assignment of error.
We now review the crux of Ms. Toups’ appeal whether the district court erred as a matter of law in its application of La. R.S. 13:5704(B) to the evidence. We must discern whether Dr. Wolfson maintains a full-time medical practice at a principal medical office facility within Plaquemines Parish. This review centers on the definition of maintenance of a “full-time medical practice” and “principal medical office facility” within the parish for purposes of allowing a non-resident physician to serve as coroner. Upon review, this Court finds no error in the judgment of the trial court.
|fiThe present statute which allows a non-resident licensed physician to serve as coroner was amended in 1999.[1] However, the amended statute did not and does not define a full-time medical practice or a principal medical office facility.
Ms. Toups contends that Dr. Wolfson’s work with the PPSO did not amount to a full-time practice because he was only required to work one day a week; he listed Humana as his “full-time” employer in his Sworn Ethics Statement; and his practice within the parish was not his principal source of income. Ms. Toups added that a *1163 “tiny room” within the PPSO or a mobile home-like trailer could not in any way constitute a “principal medical office facility.” Ms. Toups suggests that finding Dr. Wolfson maintained a full-time medical practice at a principal medical office facility would render the statutory requirements meaningless.'
Dr. Wolfson counters that Ms. Toups’ arguments as to what constitutes a full-time medical practice and principal medical office facility are subjective. He submits that Ms. Toups put on no objective evidence from medical practitioners to contradict Dr. Wolfson’s position that a full-time doctor is someone who is responsible for his patients all the time and that a principal medical office facility is one where a physician delivers services to his patients. He reiterates that the time .he treats patients in Plaquemines Parish is equivalent to the time he spent in his private practice and that he only practices medicine in the parish.
The interest of the state and its citizens are best served when election laws are interpreted so as to give the electorate the widest possible choice of candidates. Becker v. Dean, 03-2493, p. 7 (La.9/18/03), 854 So.2d 864, 869. The laws governing elections must be liberally construed so as to promote rather than defeat 17candidacy. Id. See also Landiak v. Richmond, 05-0758, p. 7 (La.3/24/05), 899 So.2d 535, 541.
The, parties agree that La. R.S. 13:5704(B) provides no definition for full-time medical practice or principal medical office facility. In particular, the statute imposes no income requirements or number of hours worked in its definition of a full-time medical practice, nor does it mandate any size or location requirements in its definition of a principal medical office facility. As conceded by Ms. Toups’ counsel, the term “principal medical office medical facility” is. a term that anyone could define in any way they like.
Upon our review of the record, the trial court had sufficient factual evidence to reasonably conclude that Dr. Wolfson maintained a full-time medical practice at a principal medical office facility located in Plaquemines Parish. The evidence demonstrated Dr. Wolfson treated patients at his offices in Plaquemines Parish and that he only practiced medicine in Plaquemines Parish. Based on Louisiana law that favors a liberal construction of election laws to promote candidacies and the fact that there is no legislative or jurisprudential authority that defines full-time medical practice or principal medical office facility, Ms. Toups’ argument that the trial court erred in its application of the qualificátion requirements of La. R.S. 13:5704(B) to the evidence of the instant cáse lacks merit.
Wherefore, based on the foregoing reasons, we find the trial court properly denied the petition objecting to Dr. Wolfson’s candidacy as Coroner of Plaquemines Parish. Accordingly, the judgment is affirmed.
JUDGMENT AFFIRMED
BONIN, J., concurs.

. See Legislative History extracted from http;// www.legis.la.gov/legis/, Bills, Other Sessions, 1999 Regular Session, SB118 by Senator Mike Smith.