|, CANNIZZARO, J.
dissents with reasons.
I respectfully dissent from the majority.
The majority opinion concludes that the trial court judge did not err in finding that Mr. Barney was disqualified from running for a seat in the Third Senate District. Their finding is based on the following: (1) Mr. Barney was not an elector in the ward and precinct listed on his Notice of Qualification; and (2) the trial court judge was not manifestly erroneous in finding that Mr. Barney was not domiciled in the district that he sought to represent.
ISSUE OF BEING AN ELECTOR IN THE DISTRICT
The criteria to qualify as a candidate for the Louisiana legislature is set forth in La. Const. Art. Ill, § 4(A). It provides:
An elector who at the time of qualification as a candidate has attained the age of eighteen years, resided in the state for the preceding two years, and has been actually domiciled for the preceding year in the legislative district from which he seeks election is eligible for membership in the legislature.
*561 The majority states that “[ujnder the unambiguous language of the adopted constitution, in order to be eligible for membership in the legislature, at the time he or she files his notice of candidacy, the candidate must be an elector who: 1) Is at least eighteen years of age; 2) Has resided in Louisiana for the preceding two ¡¿years; and 3) Has been actually domiciled for the preceding year in the district he wants to represent.” (Emphasis in original.) The majority then concludes that Mr. Barney lacks a constitutionally mandated qualification for office, because he is not a qualified voter in the district he seeks to represent.
What the majority does, however, is take an unambiguous constitutional provision and add additional qualifying language to it to reach the conclusion that Mr. Barney must be a qualified voter in the district he seeks to represent. There is no dispute that the word “elector” means a person who is a qualified voter. Therefore, the majority rewrites La. Const. Art. Ill, § 4(A) to read as follows:
An elector qualified to vote in the district he seeks to represent, who at the time of qualification as a candidate has attained the age of eighteen years, resided in the state for the preceding two years, and has been actually domiciled for the preceding year in the legislative district from which he seeks election is eligible for membership in the legislature.
By adding this additional qualification, the majority has changed the clear, unambiguous meaning of La. Const. Art. Ill, § 4(A).
In doing so, the majority has violated one of the basic rules of statutory construction. La. C.C. art. 9 states this rule as follows:
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.
I find that La. Const. Art. Ill, § 4(A) is clear and unambiguous in its meaning. Quite simply, it means that at the time a person qualifies to be a candidate for the legislature, that person must meet all of the following criteria:
1. The person must be registered to vote;
2. The person must be at least eighteen years .of age;
| ?i3. The person must have resided in Louisiana for the two years preceding his qualification for the legislature; and
4. The person must have been domiciled for the year preceding his qualification in the district he seeks to represent.
These are the simple, straightforward requirements that are stated clearly and unequivocally in the state constitution. There is no requirement that the candidate be a registered voter in the district he seeks to represent. A candidate is simply required to be a registered voter. I find that the majority erred in reading additional qualifying language into the constitutional provision.
The majority opinion severely limits or restricts an elector’s right to qualify as a candidate for the legislature by interpreting La. Const. Art. Ill, § 4(A) as they do. This is a consequence that I do not think that the framers of the constitution intended. If they had intended to restrict electors to electors qualified in the district they sought to represent, they would have expressly stated this in the constitutional provision. This is not something that can be inferred from the language absent a clear expression of the framers’ intent.
*562 ISSUE OF DOMICILE
In discussing the facts of this case, the majority does not give the appropriate consideration to the essential elements of the testimony that were presented in the trial court. Adequate discussion of the domicile issue requires a more thorough explanation of the witnesses’ testimony. Because I believe the trial court judge was manifestly erroneous in her consideration of the facts, and because the majority opinion does not sufficiently discuss the facts, it is necessary to give a detailed recitation of what was presented below.
| ¿Testimony of Mr. Barney
Mr. Barney testified that he had lived in his parents’ home at 11900 Morrison Road in New Orleans during his childhood, that he had attended college in Washington, D.C., and that after college, he had lived in a number of places because of his job. He was “gradually coming back spending more time” in New Orleans. On these occasions, he stayed with his parents on Morrison Road. He moved back to New Orleans permanently in the fall of 2001, and he lived with his parents in their home. He moved out of his parents’ home in June of 2003, after he signed a lease to rent one-half of a double house at 4490 DeMontluzin Street. At that time, he signed a one-year lease, had all of his furniture moved from an out-of-state storage facility to the DeMontluzin Street house, and then moved with his personal belongings to that house.
He testified that he moved to his new residence, because he liked the Gentilly area of town where the residence was located. He also wanted to have a home of his own and ultimately planned to buy a home in Gentilly. He had, in fact, considered purchasing the double house on De-Montluzin from his landlord, but she wanted to retain it as an investment property.
Mr. Barney further testified that he had never changed his voter registration from his parent’s home address on Morrison Road, which is where he registered to vote when he was eighteen years old. Mr. Barney also stated that he voted at a polling place in the Second Senate District, most recently in the November 2004 presidential election.
Additionally, Mr. Barney testified that the telephone number that he listed on his Notice of Candidacy was a number for a telephone located at the DeMontluzin Street address. The telephone number, however, was in his roommate’s name.
| ¿Testimony of Mr. Barney’s Landlord
Diana Parsons, the owner of the De-Montluzin Street house, testified at trial that she had leased the premises at 4490 DeMontluzin Street to Mr. Barney and that when she had done so, she had understood that Mr. Barney and a friend of his would be living there. She also said that the lease was a one-year lease beginning in June of 2003, and ending July 2004, but that the lease contained a provision providing that it would automatically convert to a month-to-month lease after the original term expired.
Ms. Parsons also testified that Mr. Barney resided at 4490 DeMontluzin Street. She based this testimony on the following facts: (1) Mr. Barney periodically called her to make repairs to the house; (2) she had seen him at the house when she had been there; and (3) when she had recently gone to the house to collect the rent check, Mr. Barney was there. Finally, she testified that she knew that Mr. Barney conducted a business on DeMontluzin Street, because he had asked her permission to have a computer placed on the back porch of the house for the business operated by him and his roommate.

*563
Testimony of Mr. Barney’s Neighbor

Diana Woods, the tenant who lived in the other half of the house on DeMontluzin Street, testified that Mr. Barney had been living on DeMontluzin Street as her next-door neighbor since June of 2003. She said that they frequently left for work at the same time, that he used the water hose on her side of the house to wash his car, and that he was “always parking right in front of my car.” She said that Mr. Barney resided in half of the double house where she lived.

Testimony of Mr. Barney’s Parents

Mr. Barney’s mother, Marie Barney, testified that she and her husband, Mr. Barney’s father, had lived at the Morrison Road address for approximately thirty years. She testified that Mr. Barney had lived with them during his childhood, that |fihe had gone away to college, and that, in the fall of 2001, he had returned to New Orleans to live. At that time he moved into her home on Morrison Road. She further said that in the late spring or early summer of 2003, her son moved out of her home. She testified that “[h]e wanted to move out on his own and he found a place; he’s gotten himself situated in New Orleans and decided to find a place for himself.” After he moved to his new home, Mrs. Barney visited him there frequently. She specifically testified that he purchased a bed for his DeMontluzin Street home. She also identified his roommate. She said that Mr. Barney had been living continually at his DeMontluzin Street home since he moved out of her home, that he had removed his clothes and personal effects from her home, and that whenever he traveled out of town, he returned to his home on DeMontluzin Street. Finally, she stated that he did not receive any money for living expenses from his parents and that he did not contribute to their household expenses.
When she was asked whether Mr. Barney had a change of clothes at her address, she said that there were some old clothes of his from grade school that were still at her home. She further said that she did not think that he even had a toothbrush or shaving equipment at her house. Although she testified that Mr. Barney sometimes received mail at her home and had a key to her house, she said that Mr. Barney made his residence at the house on DeMontluzin Street.
Mr. Barney’s father, Clarence Barney, did not testify at the trial. It was stipulated, however, that his testimony would be substantially the same as Mrs. Barney’s testimony.

Testimony of Mr. Barney’s Gardener

Neil Hamilton, the gardener who maintained the lawn at Mr. Barney’s home on DeMontluzin Street, testified at the trial. He said that he had taken care of Mr. Barney’s lawn for approximately a year and that he also maintained Mr. Barney’s parents’ lawn on Morrison Road. He testified that Mr. Barney paid him in cash |7and that he had gone to Mr. Barney’s home on DeMontluzin Street once a week in the summer and once every two weeks in the winter. He said that he had seen Mr. Barney on the premises on DeMont-luzin Street and that they sometimes spoke when Mr. Barney came home and he was there.

Testimony of Mr. Barney’s Roommate

Corey Wilson, Mr. Barney’s roommate, testified at the trial. He said that he and Mr. Barney had been friends since they met at school in the seventh grade. Mr. Wilson attended college in Atlanta, Georgia, and he graduated from Harvard Law School. After graduating from law school, Mr. Wilson practiced law in Houston, Texas, but he wanted to return to New Orleans. After Mr. Wilson returned to New *564 Orleans, he stayed at a friend’s house. Mr. Wilson planned to pursue a business venture with Mr. Barney, and when Mr. Barney asked Mr. Wilson if he would like to be his roommate at the DeMontluzin Street residence, Mr. Wilson said yes.
Mr. Wilson testified that he moved to the DeMontluzin address before Mr. Barney did, because Mr. Barney did not yet have a bed for the new residence. By the end of June in 2003, however, Mr. Barney had also moved to DeMontluzin Street. Because Mr. Wilson had moved there before Mr. Barney, Mr. Wilson had the utility services put in his own name. Both roommates shared the expenses, however.
Mr. Wilson testified that he had lived on DeMontluzin Street continuously since he had moved there at the end of May of 2003, and that Mr. Barney had lived there continuously since the end of June of 2003. He further testified that Mr. Barney kept his clothes, his toiletries, and shaving materials at the residence on DeMontluzin Street. Finally, he testified that he knew that Mr. Barney did not live at his parents’ home, “[b]eeause he lives with me at the DeMontluzin address.”

IsElection Law and Domicile

Because election laws are to be interpreted to give the electorate the widest possible choice of candidates, a person objecting to the candidacy bears the burden of proving that the candidate is disqualified. See Landiak v. Richmond, 2005-0758 (La.3/30/05), 899 So.2d 535. If a particular domicile is required for candidacy, then the burden of showing lack of domicile rests on the party objecting to the candidacy. Becker v. Dean, 03-2493, p. 7 (La.9/18/03), 854 So.2d 864, 869; Pattan v. Fields, 95-2375 (La.9/28/95), 661 So.2d 1320. Any doubt as to the qualifications of a candidate should be resolved in favor of the candidate. Russell v. Goldsby, 00-2595, p. 4 (La.9/22/00), 780 So.2d 1048, 1051; Dixon v. Hughes, 587 So.2d 679, 680 (La.1991).
La. C.C. art. 38 defines domicile as follows:
The domicile of each citizen is in the parish wherein he has his principal establishment.
The principal establishment is that in which he makes his habitual residence; if he resides alternately in several places, and nearly as much in one as in another, and has not declared his intention in the manner hereafter prescribed, any one of the said places where he resides may be considered as his principal establishment, at the option of the persons whose interests are thereby affected.
(Emphasis added.)
Louisiana law allows a person to have more than one residence. However, a person can only have one domicile. La. C.C. art. 38; Messer v. London, 438 So.2d 546, 547; Villane v. Azar, 566 So.2d 645 (La.App. 4 Cir.1990). Cases resolving conflicts of domicile have found that two elements are necessary to establish a person’s domicile, namely, residence and intent to remain in the place. Becker, 03-2493, at p. 10, 854 So.2d at 871; Russell, 00-2595 at p. 5, 780 So.2d at 1051.

__[c|Proof of a Candidate’s Domicile

La. R.S. 18:451 relative to “qualifications of candidates,” specifically requires that when “the qualifications for an office include a residency or domicile requirement [in this case, it is a domicile requirement], a candidate shall meet the established length of residency or domicile as of the date of qualifying.” La. Const. Art. Ill § 4(A), as previously stated, provides that a candidate for legislative office shall be 18 years of age, be an elector, have been a resident of the state for two years, and have been domiciled in the district in *565 which he seeks to run for one year. In view of these requirements, the plaintiff in this case bears the burden of proving that Mr. Barney was not domiciled in the Third Senate District for the one year immediately preceding the date of qualifying.
The Louisiana Supreme Court in Landiak, supra, set forth the burden of proof as follows:
Generally, the legal term “burden of proof’ “denotes the duty of establishing by a fair preponderance of the evidence the truth of the operative facts upon which the issue at hand is made to turn by substantive law.” Black’s Law Dictionary (8th ed). Under Louisiana’s civil law, the “burden of proof’ may shift back and forth between the parties as the trial progresses. Therefore, when the burden of proof has been specifically assigned to a particular party, that party must present sufficient evidence to establish the facts necessary to convince the trier of fact of the existence of the contested fact. Stated another way, the party on which the burden of proof rests must establish a prima facie case. If that party fails to carry his burden of proof, the opposing party is not required to present any countervailing evidence. On the other hand, once the party bearing the burden of proof has established a prima facie case, the burden then shifts to the opposing party to present sufficient evidence to overcome the other party’s prima facie case.
Landiak, 2005-0758, at p. 4, 899 So.2d 539.
In an effort to carry her initial burden of proof by establishing a prima facie case that Mr. Barney was not domiciled in the Third Senate District for the one-year period preceding the date of qualifying, April 19, 2005, the plaintiff [^introduced into evidence the following: (1) the Notice of Candidacy qualifying form completed by Mr. Barney and (2) records from the Office of Registrar of Voters for Orleans Parish. These records listed Mr. Barney’s residence and address as 11900 Morrison Road, listed his voter registration in Ward 9, Precinct 44, and showed that he most recently voted at Ward 9, Precinct 44 in the November 11, 2004 election. The plaintiff additionally relied on Mr. Barney’s testimony that the Notice of Candidacy qualifying form executed by him contained the wrong ward and precinct numbers of his voter registration.
Mr. Barney acknowledged that he had listed his address as 4490 DeMontluzin Street, but that Ward 8, Precinct 21, which was entered on the form by a person in the clerk of court’s office, was not, in fact, where he was registered to vote. Rather, he was registered to vote at his parents’ house on Morrison Road in Ward 9, Precinct 44, which was not in the Third Senate District. Mr. Barney also admitted that he did not change his voter registration to the DeMontluzin address until April 28, 2005, after executing the qualifying form. His driver’s license and vehicle registration contained the Morrison Road address. He also acknowledged that he still continued to receive some mail, such as alumni mail from his high school and college alma maters, mail from a church to which he once belonged, and other miscellaneous items, at the Morrison Road address. Most of his mail, however, was delivered to his DeMontluzin Street address. He had two bank accounts, and he received mail regarding one account at the Morrison Road address and mail regarding the other at the DeMontluzin Street address.
The totality of this evidence, in my opinion, is not sufficient to establish a prima facie ease that Mr. Barney’s domicile, his principal establishment, was not on De-Montluzin Street for the one-year period preceding qualifying. The fact that Mr. Barney received some mail at the Morri *566 son Road áddress is of no import. Mr. Barney also received mail at the DeMont-luzin Street address. In addition, Mr. luBarney’s driver’s license and vehicle registration were renewed prior to April 19, 2004, the operative date for domiciliary purposes.[1] The fact that these documents contain the Morrison Road address does not show that he was domiciled at that address or that he was not domiciled at DeMontluzin Street during the pertinent time period. Finally, the fact that Mr. Barney voted in the November 11, 2004 election in Ward 9, Precinct 44, where he had been registered to vote at that time, does not prove that he was not domiciled at the DeMontluzin address. The law does not require that a person register to vote at his domicile.
Considering that actual residence (at least part of the time) at a place is one prong of the test to establish domicile, conspicuously absent from the plaintiffs case is any evidence that Mr. Barney did not physically reside on DeMontluzin Street. A review of the record discloses that not only did the plaintiff not prove that Mr. Barney was not domiciled at the DeMontluzin address the year preceding his qualifying but she also failed to prove that his domicile was anywhere other than DeMontluzin Street. Notably, the plaintiff failed to offer testimony from any witness to contradict Mr. Barney’s claim that his domicile or principal domestic establishment was on DeMontluzin Street. Nobody testified that Mr. Barney lived, slept, and kept his personal effects anywhere other than DeMontluzin Street.

Trial Court Judge’s Opinion

The trial court judge stated in her per curiam “subjective evidence, i.e., an individual’s testimony alone will not suffice to establish an individual’s domicile.” In the instant case, however, not only Mr. Barney testified that he lived at the DeMontluzin Street house, his landlord, his neighbor, his gardener, and his roommate, as well as his parents, testified that he had lived there during the one-year period prior to his qualification to run for the senate seat in the Third Senate District. On the other hand, the only evidence presented by Ms. Suarez was that of |12Mr. Barney, as an adverse witness. No witnesses, objective or otherwise, testified that Mr. Barney lived at the Morrison Road address.[2]
In her per curiam the trial court judge also relies on some legally incorrect premises. She notes that Mr. Barney’s lease is not recorded anywhere and that he has not executed a written, formal notice of change of domicile. The fact that the lease is not recorded is irrelevant to the inquiry in this case. There is no requirement that the lease be recorded for Mr. Barney to be domiciled at the leased premises. Also, although La. C.C. art. 42 provides that an intention to change domicile may be proved by “an express declaration of it before the recorder of the parishes, from which and to which he shall intend to remove,” this article refers to a change in the parish of domicile, which is not at issue here. The issue in this case is a change in the political district of domicile. Additionally, the declaration permitted by La. C.C. *567 art. 42 is in no way required for a change in domicile; it is a means to prove such a change.
In discussing Mr. Barney’s application for a line of credit with Liberty Bank, the trial court judge states that “[hjowever, like the lease, this was not recorded anywhere and it is not part of any public record.” I am aware of no legal or other requirement that a personal loan application be registered or recorded for any purpose in any public record.
The trial court judge also relies on certain documents, such as “Mr. Barney’s driver’s license, car registration and voter’s registration card,” all of which have the Morrison Road address, to support Ms. Suarez’s contention that Mr. Barney was domiciled on Morrison Road. Because the overwhelming weight of the | ^evidence at trial showed that Mr. Barney has lived on DeMontluzin Street for the past year, has lived nowhere else during that time period, and has his furniture, clothing, and personal effects at the house on DeMontluzin Street where he was physically present and where he slept at night, there is no need to show by documentary evidence that Mr. Barney intended to change his domicile when he moved himself and all of his property almost two years ago to what has been his principal establishment on DeMontluzin Street.
As discussed above, it is well settled that the laws governing the conduct of elections are to be liberally construed so as to promote rather than to defeat a candidacy and any doubt concerning the qualifications of a candidate should be resolved in favor of allowing the candidate to run for public office. Therefore, I would find that the trial court erred as a matter of law in finding that the plaintiff established by a preponderance of the evidence that Mr. Barney was not domiciled in the Third Senate District for the one-year period preceding the qualifying date.
Based on the foregoing discussion, I would find that the trial court judge made consequential legal errors in this case. Therefore, I believe this court should review the entire record de novo and render a judgment. Rosell v. ESCO, 549 So.2d 840 (La.1989), 844, n. 2, citing Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975). Determination of Domicile
In the instant case, it is clear from the testimony that Mr. Barney has had his residence at 4490 DeMontluzin Street since June of 2003. The uncontradicted testimony in this case is that Mr. Barney has lived on the premises at that address for a period of at least one year prior to his qualifying for the Third District Senate seat. Domicile is defined in La. C.C. art. 38 as “the parish where he has his principal establishment.” That article then defines “principal establishment” as “that in which he makes his habitual residence.” Therefore, if a person has only [ 14one residence, his domicile is at that residence. If, however, a person has more than one residence and resides nearly as much time in one as in another, any of the places where he resides may be considered his principal establishment at the option of a person whose interest is affected by the location of the domicile. La. C.C. art. 38. There was no evidence to show that Mr. Barney physically or actually resided anywhere other than 4490 DeMontluzin Street during the one-year period preceding his qualifying for the Third District Senate seat.
Because Mr. Barney has only one residence, the question of where he intends to reside is not an issue. His sole residence is, by definition, his principal establishment under La. C.C. art. 38. Because a person’s domicile is where he has his principal establishment, Mr. Barney’s domicile is where he resides. That is 4490 De- *568 Montluzin Street and has been so since June of 2008. That domicile is in the Third Senate District. Therefore, he is domiciled in that district.[3]
Landiak, supra, is distinguishable from the instant case, because, the issue in Landiak was which of the two residences maintained by the candidate was the candidate’s domicile. In that case, because there was evidence that he physically resided in both places, the Louisiana Supreme Court looked at the objective indications of his intent to determine his domicile, such as a sworn statement on a notice of candidacy that he had executed in connection with his candidacy for a Louisiana state house of representatives seat and other documentary evidence. In the instant case, however, it is uncontro-verted that Mr. Barney has only one residence. Therefore, there is no need to consider documentary evidence to determine in which of multiple residences he intends to make his domicile.
|,,CONCLUSION
Based on the foregoing discussion, I would reverse the judgment of the trial court declaring that Mr. Barney is ineligible and disqualified as a candidate for the Third Senate District senate seat.

. This date was before the one-year domicile period began.

. The only testimony that the trial court judge heard was that of Mr. Barney. All of the other testimony she had to consider was the transcript from the Jefferson Parish district court case. At oral argument it was stipulated that the testimony that the trial court judge heard from Mr. Barney was substantially the same as his testimony in the Jefferson Parish case. Therefore, we were in the same position as the trial court to determine the facts in this case, because the credibility of the Jefferson Parish witnesses could not be evaluated by the trial judge.

. I note that La. C.C. art. 38 refers to a parish of domicile. There is no law that addresses the issue of a political district of domicile. I have, therefore, extrapolated from La. C.C. art. 38 to find that the domicile of each citizen is the place where he has his principal establishment.