PER CURIAM.
11 Japhet P. Ogden and Alton J. Crow-den,[1] two of the original plaintiffs and now the appellants, have timely appealed the judgment of the trial court’s finding that the defendant/appellee, James A. Gray, II, is qualified to run for an unexpired term for a district seat on the New Orleans City Council, because he was domiciled in District E for the two years preceding the scheduled November 6, 2012 primary election. After reviewing the record on appeal and the applicable law, we affirm.
The trial court found that, considering the testimony of the parties and the relevant documentary evidence, discussed below, Mr. Gray was qualified to run for New Orleans City Council, District E, because he was in fact domiciled at 6051 Winchester Park Drive located in District E for at least two years preceding the scheduled November 6, 2012 primary election.
In this case, questions of law are decided using a de novo standard of review. Factual issues are reviewed using the manifest error/clearly wrong standard of review. A court of appeal gives great deference to a trier of fact’s factual findings |2based on credibility judgments. See Rosell v. ESCO, 549 So.2d 840, 845 (La. 1989); Stobart v. State, Dept, of Transp. and Dev., 617 So.2d 880, 882 (La.1993). But, “[wjhere documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the wit *1091 ness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination.” See Stobart, id.
There is no legitimate conflict in testimony where documents or objective evidence so contradict the witness’s story, or the story presented by the witness is so internally inconsistent or implausible on its face, that a reasonable fact-finder could not give credence to the witness’s testimony. Faced with such circumstances, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination.
Henderson v. Nissan Motor Corp., 03-0606 (La.2/6/04), 869 So.2d 62, 68-69 [internal citations omitted]. See also Stein-hardt v. Batt, 00-0328 (La.App. 4 Cir. 2/11/00), 753 So.2d 928, 930, (“[t]he trial judge’s conclusion [regarding domicile] is clearly a factual finding subject to the manifest error standard of appellate review.”)
The manner of qualifying for election to public office in Louisiana is set forth in La. R.S. 18:461 A(l), which provides, in pertinent part, that “[a] person who desires to become a candidate in a primary election shall qualify as a candidate by timely filing notice of his candidacy.” La. R.S. 18:463 A(l)(a) states: “A notice of candidacy shall be in writing and shall state the candidate’s name, the office he seeks, the address of his damicile, the parish, ward, and precinct where he |ais registered to vote, and the political party, if any, with which he is registered as being affiliated.” [Emphasis added.] An objection to eandidacy is governed by La. R.S. 18:1401 A, which provides that “[a] qualified elector may bring an action objecting to the candidacy of a person who qualified as a candidate in a primary election for an office in which the plaintiff is qualified to vote.”[2] “Grounds for an objection to candidacy” include the following: “The defendant does not meet the qualifications for the office he seeks in the primary election.” La. R.S. 18:492 A(3). See Landiak v. Richmond, 05-0758 (La.3/24/05), 899 So.2d 535.
Because election laws must be interpreted to give the electorate the widest possible choice of candidates, a person objecting to candidacy bears the burden of proving that the candidate is disqualified. See Landiak, p. 7, 899 So.2d at 541; Becker v. Dean, 03-2493, p. 7 (La.9/18/03), 854 So.2d 864, 869; Russell v. Goldsby, 00-2595, p. 4 (La.9/22/00), 780 So.2d 1048, 1051. It follows that, when a particular domicile is required for candidacy, the burden of showing the lack of domicile rests on the party objecting to the candidacy. Landiak, id.; Becker, id.; see also Paitan v. Fields, 95-2375 (La.9/28/95), 661 So.2d 1320. Further, a court determining whether the person objecting to candidacy has carried his burden of proof must liberally construe the laws governing the conduct of elections “so as to promote rather than defeat candidacy.” Becker, id.; Russell, id. Any doubt | concerning the qualifications of a candidate should be resolved in favor of allowing the candidate to run for public office. Landiak, id.; Becker, id.; Russell, id.
La. R.S. 18:451, relative to “qualifications of candidates,” specifically requires that when “the qualifications for an office *1092 include a residency or domicile requirement [in this case, a domicile requirement], a candidate shall meet the established length of residency or domicile.” As is evident from the use of the word “shall” in the above statute, the requirement is mandatory. The Home Rule Charter of the City of New Orleans, § 3-104, specifically requires that “candidates for district councilmember shall have been domiciled in the districts from which elected for at least two years immediately preceding their election.” The effect of these legal requirements taken together is that the plaintiffs in this case bear the burden of proving that Mr. Gray was not domiciled in New Orleans City Council District E for at least two years immediately preceding the scheduled November 6, 2012 primary election.
The terms “residence” and “domicile” are legal terms that are not synonymous. Landiak, p. 8, 899 So.2d at 542; Becker, p. 10, 854 So.2d at 871. The most significant difference between the two concepts is that a person can have several residences, but only one domicile. Id. Domicile is an issue of fact that must be determined on a case-by-case basis. Landiak, id.; Darnell v. Alcorn, 99-2405, p. 5 (La.App. 4 Cir. 9/24/99), 757 So.2d 716, 719.
La. C.C. art. 38 provides that: “[t]he domicile of a natural person is the place of his habitual residence,” whereas La. C.C. art. 39 states: “[a] natural person may | Sreside in several places but may not have more than one domicile. In the absence of habitual residence, any place of residence may be considered one’s domicile at the option of persons whose interests are affected.” Finally, La. C.C. art. 44 reads: “[d]omicile is maintained until acquisition of a new domicile. A natural person changes domicile when he moves his residence to another location with the intent to make that location his habitual residence.”
Louisiana case law has traditionally held that domicile consists of two elements: residence and intent to remain. Landiak, p. 9, 899 So.2d at 542; Becker, p. 10, 854 So.2d at 871; Russell, p. 5, 780 So.2d at 1051. When a party has not declared his intention in the manner prescribed by La. C.C. art. 42, proof of a person’s intention regarding domicile “shall depend upon circumstances.” La. C.C. art. 43; Landiak, id. Determination of a party’s intent to change his or her domicile must be based on the actual state of the facts, not simply on what the person declares them to be. Landiak, p. 9, 899 So.2d 543, citing Davis v. Glen Eagle Ship Management Corp., 97-0878, p. 2 (La.App. 4 Cir. 8/27/97), 700 So.2d 228, 230.
The case law regarding domicile reveals that Louisiana courts commonly consider a number of different factors when trying to determine domicile in fact. Because domicile is generally defined as residence plus intent to remain, a party’s uncontroverted testimony regarding his intent may be sufficient to establish domicile, in the absence of documentary or other objective evidence to the contrary. However, in the absence of a formal declaration of domicile, when documentary or other objective evidence casts doubt on a person’s statements regarding intent, courts must weigh the evidence presented in order to determine domicile-in-fact, lest the legal concept of domicile be rendered meaningless and | (¡every person would be considered legally domiciled wherever he says he is domiciled. Landiak, p. 10, 899 So.2d at 543. Some of the types of documentary evidence commonly considered by courts to determine domicile-in-fact include such things as (a) voter registration, (b) homestead exemptions, (c) vehicle registration records, (d) driver’s license ad *1093 dress, (e) statements made in notarial acts, and (f) evidence that most of the person’s personal property is housed at a particular location. Landiak, pp. 10-11, 899 So.2d at 543-44. The more of these items presented by a party opposing candidacy in a given case to show lack of domicile, the more difficult it will be for the candidate to overcome the plaintiffs evidence. Id., p. 11, 899 So.2d at 544.
The record reveals that Mr. Gray and his wife purchased the house at 6051 Winchester Park Drive in District E of New Orleans in 1988; they do not own any other property in that district. The house sustained substantial damage in Hurricane Katrina in 2005, requiring a complete renovation. After the storm, they lived in a trailer located on Downman Road in eastern New Orleans. They also lived with his mother at 78 Avenue[3] in Scotlandville, Louisiana (near Baton Rouge) and with his son and daughter-in-law at 1628 North Dupre Street in New Orleans.[4] In addition, the Grays purchased a home in 2006 for his mother-in-law in Baton Rouge located at 5883 Bennington Avenue. After his wife’s mother died in 2008, the property was sold. While Mr. Gray is actively renovating the house at 6051 Winchester Park Drive, it has been, and is currently, uninhabitable. (We understand “uninhabitable” to mean not fit to be lived in by normal humans.)
|7The plaintiffs introduced exhibits, including a Louisiana Tax Commission change order that did not issue Mr. Gray a homestead exemption[5] at 6051 Winchester Park Drive for the 2012 tax year, and a notarial act of cash sale for the purchase of the Bennington Avenue property in 2006, indicating the Mr. Gray and his wife were residents of East Baton Rouge Parish with a “permanent mailing address” at the Ben-nington Avenue house. However, when the house was sold two years later, Mr. Gray and his wife stated in that notarial act of cash sale that they were residents of Orleans Parish with a “current mailing address” at 1628 North Dupre Street.
The plaintiffs also introduced the notarial act of collateral mortgage that Mr. Gray and his wife executed on July 31, 2012, which stated that they were domiciled and residing in Orleans Parish with the North Dupre Street mailing address. The money obtained from that mortgage is being used to renovate 6051 Winchester Park Drive.
The plaintiffs called Mr. Gray to testify in their case-in-chief. Mr. Gray stated he had slept at various places since Hurricane Katrina, but has only one domicile, 6051 Winchester Park Drive, where he intends to return once the renovations are done in the latter part of this year. He admitted that he has used at least two different mailing addresses during this time, but his domicile has never changed. He returned shortly after Hurricane Katrina and had to completely gut his house due to the flood waters. Within months of that, he hired an electrician to rewire the house. He testified that he still receives a bill from the Sewerage and Water Board for that property.
|sMr. Gray admitted that he purchased the house on Bennington Avenue in Baton Rouge and stayed there on a number of occasions in 2006; he also listed Benning-ton Avenue as his permanent mailing ad *1094 dress. He also stated that he spent nights in two separate trailers, one on Downman Road and one on Winchester Park Drive. However, he admitted that for the past two years, he has not slept more than one night in a row in District E.
Mr. Gray testified that most of his clothing is on North Dupre Street; he also has clothing at 6051 Winchester Park Drive and some at 78 Avenue in Seotlandville. He was not granted a homestead exemption on the Winchester Park Drive property in 2012, but he has appealed that with the state tax commission.
He placed a trailer in front of his house on Winchester Park Drive sometime in 2006. Sometime before the end of 2008, the Federal Emergency Management Agency removed its trailers from the city. He presently has a little trailer on the property where he will stay if he is cutting the grass the next day, but he does not live in it. His building permit to perform repairs on the house was issued in 2011.
When he testified on direct, Mr. Gray testified that he registered to vote in District E when he and his wife purchased 6051 Winchester Park Drive in 1988, and that his voter registration has remained the same to the present day. He stated that he and his wife purchased the house at 5833 Bennington Avenue in Baton Rouge because his mother-in-law’s health was deteriorating and specialized medical care was not then available in the New Orleans area. The house was sold two years later, after his mother-in-law passed away. Regardless of their listing 1628 North Dupre Street as their mailing address, it was neither his nor his wife’s intention to change their domicile to that address. For most of the time, no |9mailbox existed at his residence at 6051 Winchester Park Drive; thus, much of his mail was sent to the address of his law office.
Mr. Gray testified that he hired an electrician to rewire the house in late 2005 or early 2006. In addition, he stated that he knew carpentry and did much of the work himself. He did not get a permit when the work first began. He has not cleared all his personal effects from 6051 Winchester Park Drive. Some personal effects are in a “pod” that is presently located on the property; some are in the pool house behind the house; and some are in his office. He also stated that he probably took some things to his mother’s home and has some with him at North Dupre Street.
Mr. Gray testified that he has never taken any steps or put anything in writing that would evidence his desire or intent to change his domicile address. He took out the collateral mortgage of close to $300,000 because he wants to complete the repairs on 6051 Winchester Park Drive so that he and his wife can live there.
Mr. Gray produced witnesses and documentary evidence to prove that he always intended to return to 6051 Winchester Park Drive. Specifically, he filed for a 2011 homestead exemption on Winchester Park Drive and testified that since the home was purchased in 1988, he has not filed for a homestead exemption on any other property. He also produced a driver’s license listing 6051 Winchester Park Drive as his residence[6] and notices for candidacy for two consecutive terms on the Orleans Parish Democratic Executive Committee in 2008 and 2012 listing 6051 Winchester Park Drive as his domicile.
*1095 | l0His next door neighbor, Theodore R. Franklin, testified on Mr. Gray’s behalf. Mr. Franklin stated that he has lived at 6061 Winchester Park Drive since 2007 and knows Mr. Gray. From 2007 until the present, he has conversed with Mr. Gray at least twice a month when Mr. Gray was there to cut his grass. During some of those conversations, Mr. Gray always indicated that he was going to rebuild his home and return. Sometimes they would talk about the progress on the house. Mr. Franklin specifically recalled that Mr. Gray was having some problems with redesigning the roof. Under cross examination, Mr. Franklin admitted that Mr. Gray does not sleep in the house every night. However, on re-direct, Mr. Franklin stated that there has been some action on the house in the past two years, although much work has been done in the past two to three weeks (before the trial).
Also testifying was Jesse Earls, a carpenter. and contractor. He stated that he first discussed repairs on the house at 6051 Winchester Park Drive in April or May 2011. Mr. Earls visited the house at that time and did some work there. He told Mr. Gray that work that had been done previously was not going to pass inspection because the building codes were changed after Hurricane Katrina. He was hired by Mr. Gray to complete the renovation. The house was in such bad shape that Mr. Earls suggested to Mr. Gray that the house should be abandoned. However, in response, Mr. Gray stated, “Brother Earls, I?m not going to tear my house down.” Mr. Earls stated that while Mr. Gray has occasionally eaten at the house, it does not have electricity and is not in a condition in which to be lived.
Because Mr. Gray was displaced from his home by Hurricane Katrina in 2005, we are bound to examine La. R.S. 18:451.3 (amended in 2010), which states as follows:
Ip If the qualifications for an office include a residency or domiciliary requirement, any person who is seeking election to such office and who has been involuntarily displaced from his residence or domicile by the effects of a gubernatorially declared state of emergency shall not be considered to have vacated his domicile or residence for purposes of qualifying for and subsequently holding office, unless any of the following is true:
(1) He has established a new domicile.
(2) He has changed his registration to an address outside the voting district in which he seeks election.
(3) One year has passed since the end of the declared state of emergency.
[Emphasis added.][7]
The amendment became effective on August 15, 2010, exactly two years to the day before Mr. Gray filed his notice of candidacy-
No case has previously applied La. R.S. 18:451.3 to circumstances as those presented to us here; thus, this is a case of first impression. As such, we must determine *1096 what the legislature intended when it revised the statute in 2010. In the recent case of McLane Southern, Inc. v. Bridges, 11-1141, pp. 5-7 (La.1/24/12), 84 So.3d 479, 483, the Court stated:
“It is a fundamental principle of statutory interpretation that when a ‘law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied a written, and no further interpretation may be made in search of the intent of the legislature.’ ” Harrah’s Bossier City Inv. Co., LLC v. \ ^Bridges, 09-1916 (La.5/11/10), 41 So.3d 438, 446-447 (citing La. C.C. art. 9).... When the law is not clear and unambiguous or its application leads to absurd consequences, we must rely on the secondary rules of statutory interpretation to discern the meaning of the statutes at issue. Id. The fundamental question in all cases of statutory interpretation is legislative intent and the ascertainment of the reason or reasons that prompted the Legislature to enact the law. Pumphrey v. City of New Orleans, 05-0979 (La.4/4/06), 925 So.2d 1202, 1210 (citing In re Succession of Boyter, 99-0761 (La.1/7/00), 756 So.2d 1122, 1128). The rules of statutory construction are designed to ascertain and enforce the intent of the Legislature. Id.; Stogner v. Stogner, 98-3044 (La.7/7/99), 739 So.2d 762, 766.
The meaning and intent of a law is determined by considering the law in its entirety and all other laws on the same subject matter and placing a construction on the provision in question that is consistent with the express terms of the law and with the obvious intent of the Legislature in enacting it. Pumphrey, supra at 1210 (citing Boyter, supra at 1129; Stogner, supra at 766). The statute must, therefore, be applied and interpreted in a manner, which is consistent with logic and the presumed fair purpose and intention of the Legislature in passing it. Id. (Citing Boyter, supra at 1129.) This is because the rules of statutory construction require that the general intent and purpose of the Legislature in enacting the law must, if possible, be given effect. Id. Courts should give effect to all parts of a statute and should not give a statute an interpretation that makes any part superfluous or meaningless, if that result can be avoided. Id. It is likewise presumed that the intention of the legislative branch is to achieve a consistent body of law. Id. (Citing Stogner, supra at 766).
We first begin by examining the statute in question before it was revised in 2010. At that time, Acts 2010, No. 827, § 1 rewrote this section, which previously read:
In the event the qualifications for an office include a residency or domicile requirement, any person seeking election to such office who has been involuntarily displaced from his place of residence or domicile by the effects of a gubernatorially declared state of emergency shall not be considered to have vacated his domicile or |1Rresidence for purposes of qualifying for or holding office, unless he has either established a new domicile or has changed his registration to an address outside the voting district in which he seeks election.
Obviously, the amendment of the statute is significant. As previously written, candidates could be displaced from their domiciles indefinitely and not lose that domicile, as long as they neither established a new domicile nor registered to vote in a voting district other than the one for which they sought election. Clearly, the legislature wanted to place a time limit on the involuntary displacement.[8]
*1097 We find, however, that this amendment was substantive and is applied prospectively only.[9] La. C.C. art. 6. In Jacobs v. City of Bunkie, 98-2510, p. 8 (La.5/18/99), 737 So.2d 14, 20, citing Sudwischer v. Estate of Hojfpauir, 97-0785, p. 8 (La.12/12/97), 705 So.2d 724, the Court stated:
Substantive laws are laws that impose new duties, obligations or responsibilities upon parties, or laws that establish new rules, rights and duties or change existing ones. Interpretative laws are those which clarify the meaning of a statute and are deemed to relate back to the time that the law was originally enacted. Procedural laws prescribe a method for enforcing a substantive right.
Consequently, we do not find that this statute, as amended, is applicable to the instant matter because the gubernatorially-declared state of emergency was prior to 15 August 2010. While in committee, Representative LaFonta discussed 1 i4Hurricane Katrina and the fact that everyone should be back in their homes by now, such was not specified in the wording of the statute.
However, even if applied, we do not find that the statute bars Mr. Gray’s candidacy.
The appellants argue that the one-year is absolute; in other words, to qualify for District E, Mr. Gray had one year since the state of emergency was lifted following Hurricane Katrina to be actually residing at 6051 Winchester Place Drive or lose that address as his domicile. Conversely, Mr. Gray argues that the one-year is a “safe haven” and after its expiration, the court is to consider the facts and circumstances of the particular case and apply pre-existing law on the establishment of domicile.
We see the reasonableness of each argument, but we agree with Mr. Gray’s interpretation of the statute under the facts presented herein. Under normal circumstances, one should return to his/her home within a year of displacement. And we agree, as pointed out by the plaintiffs, seven years is a very long time; it seems that the legislature seeks to prevent these types of situations in the future. However, Hurricane Katrina was not an ordinary storm. We find that, instead, we should apply existing law on the issues of residence and domicile as applicable to the political arena.
Again we note that the well-settled law of this state favors candidacy and the law must be liberally construed so as to promote candidacy, rather than defeat it. Any doubt concerning the qualifications of a candidate should be resolved in favor of the candidate to run for public office. We find that Mr. Gray has proven through his testimony, as well as the testimony of his witnesses, along with the documentary evidence, that he has his domicile at 6051 Winchester Park Drive for 115the two years preceding the scheduled November 6, 2012 primary election. Consequently, we affirm the judgment of the trial court, finding *1098 that the court was not clearly wrong or manifestly erroneous in ruling in favor of Mr. Gray.

AFFIRMED.

McKAY, J., concurs with reasons.
LANDRIEU, J., concurs with reasons.

. Wendell M. Pierre was also a plaintiff. He was dismissed from the proceedings on an exception of no right of action when he failed to appear at trial, thereby failing to establish his standing to proceed. He is not a party to this appeal.

. "Standing to object to candidacy” is governed by La. R.S. 18:491, which provides that "[a] registered voter may bring an action objecting to the candidacy of a person who qualified as a candidate in a primary election for an office for which the plaintiff is qualified to vote.” It was established at trial that two of the plaintiffs, the appellants herein, have standing to challenge Mr. Gray.

. This is the stated address per the record on appeal.

. Mr. Gray also testified that he has spent nights in Virginia and in New Orleans hotels.

.We note that no individual is required to apply for a homestead exemption; ergo, the absence of a homestead exemption does not prove that someone has another homestead (and thusly another domicile).

. We note that the driver's license is a duplicate license that was issued to Mr. Gray on August 21, 2012, six days after he filed his notice of candidacy for the primary election in question.

. The following legislative comment to the original version of the bill (although not part of the bill itself) filed by Representative La-Fonta states:
Present law provides that a person who has been involuntarily displaced from his residence or domicile by a gubematorially declared emergency shall still be considered a resident at his permanent residence
for purposes of seeking election to a public office which has a residency or domiciliary requirement; however, present law does not apply to a person who has established a new domicile or changed his registration. Proposed law provides that present law does not apply if it has been more than one year since the emergency.

. Representative LaFonta testified before the House Committee that it had been almost five *1097 years (at that time) since Hurricane Katrina and that those displaced had had substantial time to repair their homes. He stated that if they had not, maybe they should not run for office and should spend their time renovating their homes. See Debates of the House of Representatives, April 7, 2010. (http://house. louisiana.gov/H_Video/2010/Apr2010.htm) In response to a question from Representative Connick, Representative LaFonta stated that this applied only to people living out of state. This proviso, however, does not appear in the statute itself.

. La. C.C. art. 6 states in pertinent part: “In the absence of contrary legislative expression, substantive laws apply prospectively only.”