CORRECTED COPY

| | | |
|---|---|---|
| **KAREN SCHINDLER** | * | **NO. 2022-CA-0533** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **DEREK T. RUSS AND THE** | * | |
| **HONORABLE DARREN** | | **FOURTH CIRCUIT** |
| **LOMBARD** | * | |
| | | **STATE OF LOUISIANA** |

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2022-06751, DIVISION "M"
Honorable Paulette R. Irons, Judge
* * * * * *
**Judge Dale N. Atkins**
* * * * * *
(Court composed of Judge Roland L. Belsome, Judge Daniel L. Dysart, Judge Paula A. Brown, Judge Tiffany Gautier Chase, Judge Dale N. Atkins)

**DYSART, J., DISSENTS (WITH REASONS TO FOLLOW)**
**CHASE, J., CONCURS AND ASSIGNS REASONS**

Kenneth C. Bordes
ATTORNEY AT LAW
4224 Canal Street
New Orleans, LA 70119

    COUNSEL FOR PLAINTIFF/APPELLANT, Karen Schindler

Ernest L. Jones
ATTORNEY AT LAW
2317 Canal Street
New Orleans, LA 70119

    COUNSEL FOR DEFENDANT/APPELLEE, Derek T. Russ

**AFFIRMED**
**AUGUST 8, 2022, AT 11:00 AM[1]**

---

[1] Louisiana Revised Statutes 18:1409(F) provides that "[j]udgment [by the court of appeal in an action objecting to candidacy] shall be rendered within twenty-four hours after the case is argued. The court of appeal shall indicate the date and time rendered on the judgment." Louisiana Revised Statutes 18:1413 states that "[c]omputation of all time intervals in this Chapter shall include Sundays and other legal holidays. However, if the time interval ends on a Sunday

This is an election candidacy challenge regarding domicile. Appellant, Karen Schindler (hereinafter "Ms. Schindler"), appeals the trial court's August 3, 2022 judgment, which denied her objection to the candidacy of Appellee, Derek T. Russ (hereinafter "Mr. Russ"), for the position of Judge, Municipal and Traffic Court, Division D, in Orleans Parish. For the following reasons, we affirm the trial court's judgment.

DNA
RLB
PAB

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### *Mr. Russ' July 20, 2022 Notice of Candidacy*

On July 20, 2022, Mr. Russ signed a "State of Louisiana - Notice of Candidacy (Qualifying Form)" (hereinafter "Qualifying Form") for the office of Judge, Municipal and Traffic Court, Division D, in Orleans Parish. On the Qualifying Form, Mr. Russ listed his domicile address as 2531 Pauger Street, New Orleans, LA, 70116 (hereinafter "Pauger Address"). He listed his mailing address as 700 Camp Street, New Orleans, LA, 70130. Further, he attested that he is a "duly qualified elector" for the Parish of Orleans.

---

or other legal holiday, then noon of the next legal day shall be deemed to be the end of the time interval."

1

***Ms. Schindler's July 29, 2022 Petition Objecting to Candidacy of Derek T. Russ***

On July 29, 2022, Ms. Schindler filed a "Petition Objecting to Candidacy of Derek T. Russ" (hereinafter "Petition") for judge.[2] In the Petition, Ms. Schindler sought to disqualify Mr. Russ from the primary election scheduled for November 8, 2022. Ms. Schindler alleged that "[s]ince about 2006, over 16 years, [Mr.] Russ has been domiciled at 2439 Oxford Pl, Terrytown, LA 70056 [(hereinafter "Oxford Address")]], where he remains currently domiciled with his wife and children at present." The Petition further provided that Mr. Russ is domiciled in Jefferson Parish, not Orleans Parish. "Because [Mr.] Russ [] is not domiciled in the Parish of Orleans, and/or has not been domiciled in the Parish of Orleans for the time required to qualify for the office sought, [Ms. Schindler sought] a [j]udgment . . . disqualifying [Mr.] Russ as a candidate for the primary election."

***Mr. Russ' August 3, 2022 Motion to Dismiss Petition Objecting to Candidacy***

On August 3, 2022, Mr. Russ filed a "Motion to Dismiss Petition Objecting to Candidacy" (hereinafter "Motion to Dismiss"). Therein, Mr. Russ contended that because Ms. Schindler's Petition did not contain a proposed order to set the matter for a hearing, it "was, therefore, defective, incomplete, misleading and made it impossible for the [trial court] to comply with the mandate of [La. R.S.]18:1409[3] that the trial should be commenced before 10[:00] a.m. on the

---

[2] In the Petition, Ms. Schindler also named The Honorable Darren P. Lombard, Clerk of Criminal District Court, Orleans Parish, as a defendant. Louisiana Revised Statutes 18:1402 is titled "[p]roper parties" and provides, in pertinent part, that "[t]he clerk of court, in his official capacity, if the candidate qualified with the clerk of court" is a "proper part[y] against whom actions objecting to candidacy shall be instituted[.]" La. R.S. 18:1402(A)(2).

[3] Louisiana Revised Statutes 18:1409(A)(1) provides that "[t]he trial [of an action objecting to candidacy] shall begin no later than 10:00 a.m. on the fourth day after suit was filed."

fourth day after suit was filed." The trial court considered Mr. Russ' Motion to Dismiss and Ms. Schindler's Petition at an August 3, 2022 hearing.

***August 3, 2022 Hearing***

On August 3, 2022, the trial court held a hearing on Ms. Schindler's Petition and Mr. Russ' Motion to Dismiss. The trial court denied the Motion to Dismiss and proceeded to take testimony regarding the issue of Mr. Russ' domicile.

**Exhibits Filed by Ms. Schindler**

In support of her Petition, Ms. Schindler filed five exhibits, which were admitted into evidence. One of the exhibits is a Collateral Mortgage document, which is dated November 8, 2007, and the "Mortgager" section listed Mr. Russ and the Oxford Address. Additionally, the Collateral Mortgage document stated that "[p]ersonally came and appeared . . . [Mr.] Russ, a person of the full age of majority, domiciled and residing in the Parish of JEFFERSON, State of Louisiana, whose mailing address is [the Oxford Address]." Mr. Russ signed the Collateral Mortgage document. Another exhibit was a Federal Housing Administration Loan Modification Agreement (hereinafter "FHA Loan Modification Agreement"). It listed the effective date as February 1, 2021, and it was signed by Mr. Russ on July 8, 2021. The FHA Loan Modification Agreement provided that it "amends and supplements" a September 16, 2006 mortgage and note for the Oxford Address. It did not contain the recitation from the Collateral Mortgage document that Mr. Russ was "domiciled and residing" in Jefferson Parish at the Oxford Address. Ms. Schindler also filed a December 23, 2020 Registration Certificate for a 2020 Chevrolet vehicle.[4] In the "Owner's Name" section of the certificate is Mr. Russ'

---

[4] Though the "Make" section of the December 23, 2020 Registration Certificate stated that the vehicle is a Chevrolet, the "Model" section is blank.

3

name and the Oxford Address; however, the address to which the December 23, 2020 Registration Certificate was mailed was the Pauger Address. Ms. Schindler's filed a Vehicle Registration Document regarding a 2020 Chevrolet, and the "Title Holder[]" section of the document listed Mr. Russ and the Pauger Address. The registration was dated from April 7, 2021, to October 31, 2022. Additionally, Ms. Schindler filed Mr. Russ' Qualifying Form.

**Exhibits Filed by Mr. Russ**

At the August 3, 2022 hearing, Mr. Russ filed six exhibits, which were admitted into evidence. He filed a "Voter Information Report" from the Louisiana Secretary of State with his name on it and a voter registration date of October 28, 1996. The Voter Information Report listed Mr. Russ' residence address as the Pauger Address. Additionally, Mr. Russ filed his Driver's License, which listed the Pauger Address and had an issuance date of April 10, 2022. He also filed an April 19, 2022 Registration Certificate for a 2022 Chevrolet Tahoe. In the "Owner's Name" section of the April 19, 2022 Registration Certificate was Mr. Russ' name and the Pauger Address; and, the address to which the April 19, 2022 Registration Certificate was mailed is the Pauger Address. Mr. Russ filed a "Verification of Insurance" form from Progressive Direct Auto pertaining to a 2022 Chevrolet Tahoe for a policy period of July 10, 2022, through January 10, 2023, with an effective date of July 10, 2022. The Verification of Insurance listed Mr. Russ as an insured driver and his address as the Pauger Address. Finally, Mr. Russ filed a document dated July 25, 2022, from the Jefferson Parish Assessor's Office. It listed Mr. Russ as the owner of the Oxford Address, but it stated that Mr. Russ does not have Homestead Exemption Status for the Oxford Address. Last, Mr. Russ filed a "Louisiana Voter Registration Application," which is dated December

4

23, 2020. It listed Mr. Russ as the applicant and his residence as the Pauger Address; but it was not signed by Mr. Russ. In addition to admitting the aforementioned exhibits into evidence, the trial court heard the following testimony.

**Testimony**

At the August 3, 2022 hearing, Mr. Russ provided the Pauger Address to the court reporter. He testified that "[he has] always been domiciled at [the Pauger] [A]ddress," though "[he has/had] a number of residences." Mr. Russ answered affirmatively when asked whether he understood the difference between domicile and residency. He described the Pauger Address as a "family property" and a "family home that has always been available." Mr. Russ stated that he "grew up" at the Pauger Address and has "lived there all [his] life off and on," including during elementary, high school, and his vacation breaks during law school.[5] Mr. Russ testified that he purchased the Oxford Address in 2006 and that his mother moved into the house "around 2017[ or] 2018." Counsel for Ms. Schindler asked Mr. Russ if he changed his domicile to the Oxford Address in 2017; and Mr. Russ responded "maybe in 2017 before my mom moved in that is possible" but also stated that "[his] testimony is that [the] Pauger [Address] has always been [his] domicile."

According to Mr. Russ, in 2020, he began having conversations with his family about his desire to eventually run for a judgeship in Orleans Parish. When counsel for Ms. Schindler asked Mr. Russ how long he has been domiciled at the Pauger Address, Mr. Russ responded, "[p]rior to my back surgery," and he stated that he had back surgery in "August [] 2020." He testified that "some time before

_____

[5] Mr. Russ testified that he attended law school at Southern University Law Center in Baton Rouge, Louisiana.

[his] back surgery is when [he] changed [his] domicile back to [the] Pauger [Address,]" and he reiterated that "it has always been a family home."

Counsel for Ms. Schindler asked Mr. Russ about his domicile location in 2019, and the following colloquy occurred regarding his vehicle registration:

Q.      Were you domiciled in Orleans in 2019?

A.      2019.

Q.      2019?

A.      2020.

Q.      What did you do to change that domicile status from 2019 to 2020?

A.      Well, I had a conversation with my family. That was around the time when I purchased the 2020 suburban so all of my registration and license [were] reflective of the [Pauger A]ddress.

Q.      That [was not] until 2021, correct?

A.      No. That was actually in 2020. . . .

A.      I registered my vehicle in 2020 and when we went to the [Department of Motor Vehicles] . . . what I did was I changed my official domicile in terms of the paperwork. As I indicated . . . when I had the surgery in August I was living on Pauger Street prior to that.

        . . . .

A.      2020 is when I had my vehicle registered.

Q.      At [the] Oxford [Address] in Jefferson [Parish]?

A.      On Pauger.

        . . . .

Q.      . . . When you purchased the vehicle they did not ask you what address [] you wanted to register your vehicle at?

A.      Yes. It was New Orleans.

6

Q. Where did they get the Oxford Street address from?

A. From the address -- probably from -- I [do not] know the previous vehicle.

. . . .

A. . . . [W]hen I went to get [a] brake tag in Orleans Parish that is when I found out there was an issue with the registration.

Counsel for Ms. Schindler also showed Mr. Russ the FHA Loan Modification Agreement. Mr. Russ testified as follows:

Q. Do you recall in 2006 applying for a loan for the Oxford Street house?

A. Absolutely.

Q. You swore that would be your domicile at that time?

A. Correct.

Q. Again in 2021 you did a modification under the FHA -- under that same attestation that Oxford Street was going to be your domicile?

A. No. The domicile for my address is actually on Pauger Street.

. . . .

Q. I just handed you a document from the public records of Jefferson Parish. Do you recognize that document? Take a second to look through it.
. . . .

[A.] I did a modification agreement. That is correct[].

Q. This was an FHA modification to the loan on the Oxford Street house?

A. Yes.

Q. At no time do you recall ever swearing that the Oxford Street address was your principal place of residence?

A. My principal place of residence is on Pauger Street. My mom resided at the location on Oxford Place.

7

Mr. Russ also testified that though he still owned the Oxford house, it was vacant as of March.

Showing the Qualifying Form to Mr. Russ, counsel for Ms. Schindler asked Mr. Russ about the mailing address listed on it, and this colloquy occurred.

> Q. Is there any reason why you do not get your mail at [the Pauger Address]?
>
> A. What mail are you talking about?
>
> Q. When you filled out this form you said your mailing address is different, 700 Camp Street. Is there any reason for that?
>
> A. Yes. That is my office address.
>
> Q. You do not get mail at your house?
>
> A. I get mail at my house.

Counsel for Ms. Schindler called to Mr. Russ' attention his bankruptcy proceedings in 2018 and 2019, which were held in the United States District Court, Eastern District of Louisiana. Mr. Russ stated that the proceedings were "probably around 2017" and admitted that he listed the Oxford Address as his domicile at that time. However, Mr. Russ stated that he has never filed a document indicating any intention to change his domicile from the Pauger Address. He testified that his domicile as of the date of the hearing was the Pauger Address and that it had been his domicile for at least two years prior.

Regarding his possessions, Mr. Russ testified that his clothes were at the Pauger Address "with the exception of some shoes that are at other houses where [his] wife and [children] reside."[6] He stated that he has "other personal affects" and

---

[6] Mr. Russ testified that his wife and children do not reside at the Pauger Address but do live in Orleans Parish.

"documents," including tax, financial, and work documents, at the Pauger Address as well.

Looking at his Voter Information Report while testifying, Mr. Russ stated that he has been a registered voter in Orleans Parish "since probably [19]96." He also noted that the Voter Information Report listed the Pauger Address.

Mr. Russ also testified about his April 10, 2022 Driver's License. Counsel for Ms. Schindler asked Mr. Russ if he transferred his license from the Oxford Address to the Pauger Address in April 2021 when he transferred registration of his vehicle from Jefferson Parish to Orleans Parish, and Mr. Russ answered that he had transferred his license to the Pauger Address prior to that.

During his testimony, Mr. Russ stated that his cousin, Brandy Flemming (hereinafter "Ms. Flemming"), is one of the family members with whom he lived at the Pauger Address. Ms. Flemming also testified at the hearing, stating that she has lived at the Pauger Address since 2021 and lived in the neighborhood of the Pauger Address prior to that. When Counsel for Ms. Schindler asked Ms. Flemming if Mr. Russ had a bedroom at the Pauger Address, she answered affirmatively and explained that she could answer in the affirmative because she had seen him and his belongings there. Further, she testified that she knew Mr. Russ was at the Pauger Address after his surgery because she saw him at the Pauger Address during the period of his recovery from his back surgery in August 2020. In light of her testimony that she did not move into the Pauger Address until 2021, Ms. Flemming explained that she nonetheless knew that Mr. Russ was there prior to that time "because it is a family home [where her] mom lives" and that she "was there every other day." She also testified that his belongings were at the Pauger

Address at that time. Regarding the Oxford Address, Ms. Flemming testified that she knew Mr. Russ' mom lived there.

Mr. Russ' wife, Zsatia Willis Russ (hereinafter "Mrs. Russ"), also testified at the August 3, 2022 hearing, and she likewise stated that Mr. Russ' mother lived at the Oxford Address and that she visited the house to help care for Mr. Russ' mother. Mrs. Russ testified that she and her children live at a house on Crestmont Road, which is in Orleans Parish.

**The Trial Court's Judgment**

At the close of the August 3, 2022 hearing, the trial court orally ruled on Ms. Schindler's Petition. Thereafter the trial court signed a judgment at 11:30 a.m. on August 3, 2022, in accordance with the oral ruling.[7] In its written judgment, which denied Ms. Schindler's Petition, the trial court stated, in pertinent part:

> In election law, the laws governing the conduct of elections must be liberally interpreted so as to promote rather than defeat candidacy. Here, the petitioner is alleging that Mr. Russ has not been domiciled in Orleans parish for the required amount of time prior to his qualification for election. A person's domicile is his principal establishment wherein he makes his habitual residence and essentially consists of two elements: residence and intent to remain. The petitioner[, Ms. Schindler,] has the burden of proving here that Mr. Russ both resided in the Jefferson Parish address ([the Oxford Address]) and intended to remain there. The Court finds that based on the testimony and evidence presented at the hearing, [Ms. Schindler] has failed to prove that Mr. Russ intended to remain at the Jefferson Parish address ([the Oxford Address)]. As such, [Ms. Schindler] has not satisfied [her] burden of proof and the objection to the candidacy of Derek Russ must be denied.

Ms. Schindler's timely appeal of the August 3, 2022 judgment followed.

---

[7] Louisiana Revised Statutes 18:1409(C) provides relative to election lawsuits that "the trial judge shall render judgment within twenty-four hours after the case is submitted . . . and shall indicate the date and time rendered on the judgment."

## ARGUMENTS ON APPEAL

On appeal, Ms. Schindler presents two arguments.[8] First, she contends that "the evidence, including [Mr. Russ'] own testimony, proves that [Mr. Russ] was domiciled in Jefferson Parish." Second, Ms. Schindler asserts that "once she established [Mr. Russ'] domicile in Jefferson Parish, Mr. Russ failed to carry his burden that he established domicile in Orleans Parish." In response, Mr. Russ contends that the trial court erred by failing to denying his Motion to Dismiss. Mr. Russ also asserts that the Pauger Address is his domicile of origin; that he never changed his domicile; and that the evidence offered by Ms. Schindler is insufficient to overcome the legal presumption that he retained the Pauger address as his domicile. Prior to addressing the merits of the parties' arguments, we consider the standard of review.

## STANDARD OF REVIEW

The trial court's conclusion that Ms. Schindler failed to meet her burden of proof regarding Mr. Russ' domicile is a finding of fact. As in other civil matters, an appellate court reviews a trial court's factual findings in an election challenge under the manifest error or clearly wrong standard of review. *Suarez v. King*, 2021-0458, p. 4 (La. App. 4 Cir. 8/3/21), ___ So.3d ___, ___, 2021 WL 3361780, at *2 (citing *Ellison v. Romero*, 2020-0376, pp. 3-4 (La. App. 4 Cir. 8/11/20), ___ So.3d ___, ___, 2020 WL 4592805, at *2, *writ denied*, 2020-01000 (La. 8/17/20), 300 So.3d 875); *Duhon v. Briley*, 2012-1137, p. 3 (La. App. 4 Cir. 5/23/13), 117 So.3d 253, 257 (citing *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989)). In discussing the deference owed to the trial court's factual findings, this Court has explained that

___

[8] Rather than a traditional "Assignment(s) of Error," Ms. Schindler's brief to this Court contains an "Issues Presented for Review" section and an "Argument" section, both of which are summarized herein.

"when findings of fact are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said." *Duhon*, 2012-1137, p. 3, 117 So.3d at 257 (citing *Rossell*, 549 So.2d at 844; *Pelleteri v. Caspian Grp. Inc.*, 2002-2141, 2002-2142, pp. 6-7 (La. App. 4 Cir. 7/2/03), 851 So.2d 1230, 1235). Additionally, this Court has explained that "[d]eterminations of domicile made in the district courts are subject to the manifest error rule. Thus, it is of no consequence how the appellate court might have ruled had it been sitting as the trier of fact, but rather whether a reasonable trier of fact could have reached the result that [the trial court] did." *Suarez*, 2021-0458, p. 4, ___ So.3d ___, ___, 2021 WL 3361780, at *2 (quoting *Imbraguglio v. Bernadas*, 2007-1220, pp. 2-3 (La. App. 4 Cir. 9/21/07), 968 So.2d 745, 747). *See also Augillard v. Barney*, 2005-0466, pp. 5-6 (La. App. 5 Cir. 5/4/05), 904 So.2d 751, 753. With this standard of review in mind, we turn to the principles applicable in all elections cases and the particular laws regarding domicile.

## DISCUSSION

We begin our discussion with the specific domicile laws applicable in the matter *sub judice*. Louisiana Revised Statutes 18:492(A)(3) states that "[a]n action objecting to the candidacy of a person who qualified as a candidate in a primary election shall be based on one or more of the following grounds" and lists one of the grounds as "[t]he defendant does not meet the qualifications for the office he seeks in the primary election." Louisiana Revised Statutes 18:451 provides that "[i]n the event that the qualifications for an office include a residency or domicile

12

requirement, a candidate shall meet the established length of residency or domicile as of the date of qualifying, notwithstanding any other provision of law to the contrary." However, La. R.S. 13:2492(A)(2) provides that "[e]ach judge [on the Municipal and Traffic Court of New Orleans] . . . shall be domiciled in the parish of Orleans for at least two years prior to [the] election." As this Court has explained, "[t]he general rule of statutory construction is that a specific statute controls over a broader, more general statute." *Robin v. Creighton-Smith*, 2021-0737, p. 5 (La. App. 4 Cir. 5/11/22), 340 So.3d 174, 179 n.9 (citing *Burge v. State*, 2010-2229, p. 5 (La. 2/11/11), 54 So.3d 1110, 1113). In the matter *sub judice*, La. R.S. 13:2492 is the statute specific to municipal and traffic court judges in New Orleans, while La. R.S. 18:451 is a general statute regarding candidates for office. Accordingly, as the more specific of the two, we find that La. R.S. 13:2492 is the controlling statute; and it requires a candidate for the position of municipal and traffic court judge to be domiciled in Orleans Parish for at least two years prior to the election, which is scheduled for November 8, 2022, this year.

On appeal, the sole issue before this Court is whether the trial court erred in denying Ms. Schindler's Petition to disqualify Mr. Russ.

"There is nothing more fundamental to our society than the ability of our electorate to choose its leaders." *Becker v. Dean*, 2003-2493, p. 6 (La. 9/18/03), 854 So.2d 864, 869. Moreover, "the purpose of the election process is to provide the electorate with a wide choice of candidates." *Id.* (citing *Williams v. Ragland*, 567 So.2d 63 (La.1990); *Roe v. Picou*, 361 So.2d 874 (La.1978); *Jumonville v. Jewell*, 317 So.2d 616 (La.1975); *Langridge v. Dauenhauer*, 120 La. 450, 45 So. 387 (1908)). "The interests of the state and its citizens are best served when election laws are interpreted so as to give the electorate the widest possible choice

13

of candidates." *Ellsworth-Fletcher v. Boyd-Robertson*, 2021-0455, p. 5 (La. App. 4 Cir. 8/2/21), ___ So.3d ___, ___, 2021 WL 3284904, at \*2 (citing *Becker*, 2003-2493, p. 7, 854 So.2d at 869).

In an election contest, the party challenging the candidacy bears the burden of proving that the candidate is disqualified. *Landiak v. Richmond*, 2005-0758, pp. 6-7 (La. 3/24/05), 899 So.2d 535, 541 (citing *Becker*, 2003-2493, p. 7, 854 So.2d at 869; *Russell v. Goldsby*, 2000-2595, p. 4 (La. 9/22/00), 780 So.2d 1048, 1051; *Dixon v. Hughes*, 587 So.2d 679, 680 (La. 1991); *Messer v. London*, 438 So.2d 546 (La. 1983)). "Thus, where a particular domicile is required for candidacy, the burden of proof rests upon the party objecting to the candidacy to show a lack of domicile." *Becker*, 2003-2493, p. 7 854 So.2d 864 at 869 (citing *Pattan v. Fields*, 1995-2375 (La. 9/28/95), 661 So.2d 1320). "A court determining whether the person objecting to candidacy has carried the burden of proof must liberally construe the laws governing the conduct of elections 'so as to promote rather than defeat candidacy.'" *Ellsworth-Fletcher*, 2021-0455, p. 4, ___ So.3d ___, ___, 2021 WL 3284904, at \*2 (quoting *Becker*, 2003-2493, p. 7, 854 So.2d at 869). "Any doubt as to the qualifications of a candidate should be resolved in favor of allowing the candidate to run for public office." *Becker*, 2003-2493, p. 7, 854 So.2d at 869 (citing *Russell*, 2000-2595, p. 4, 780 So.2d at 1051; *Dixon*, 587 So.2d at 680).

In her Petition and in her briefs to this Court, Ms. Schindler challenges the trial court's factual finding regarding domicile. According to La. R.S. 18:492(A)(3), one of the grounds which an objection to candidacy shall be based is that the candidate does not meet the qualifications for the office he seeks in the primary election. The office Mr. Russ seeks is Judge, Municipal and Traffic Court, Division D, in Orleans Parish. Louisiana Revised Statutes 13:2492(A)(2) provides

that "[e]ach judge [on the Municipal and Traffic Court of New Orleans] . . . shall be domiciled in the parish of Orleans for at least two years prior to [the] election."

"Louisiana case law has traditionally held that domicile consists of two elements, residence and intent to remain." *Landiak*, 2005-0758, p. 9, 899 So.2d at 542 (citing *Becker*, 2003-2493, p. 10, 854 So.2d at 871; *Russell*, 2000-2595, p. 5, 780 So.2d at 1051). Regarding the first element, "[t]he domicile of a natural person is the place of his habitual residence." La. C.C. art. 38. Though "[a] natural person may reside in several places[,]" one "may not have more than one domicile." La. C.C. art. 39. "In the absence of habitual residence, any place of residence may be considered one's domicile at the option of persons whose interests are affected." *Id.*

Concerning the intent element of domicile, La. C.C. art. 44 provides that "[d]omicile is maintained until acquisition of a new domicile" and that "[a] natural person changes domicile when he moves his residence to another location with the intent to make that location his habitual residence." According to La. C.C. art. 45, "[p]roof of one's intent to establish or change domicile depends on the circumstances. A sworn declaration of intent recorded in the parishes from which and to which he intends to move may be considered as evidence of intent." However, absent such a declaration, Louisiana courts have held that "[t]here is a presumption that a person's domicile remains the same unless there is sufficient evidence to show [one's] intent to change it." *Aguillard*, 2005-0466, p. 6, 904 So.2d at 753 (citing *Landiak*, 2005-0758, pp. 9-10, 899 So.2d at 543). Thus, "a party seeking to show that domicile has been changed must overcome that presumption by presenting positive and satisfactory proof of establishment of domicile as a matter of fact with the intention of remaining in the new place and of

abandoning the former domicile." *Suarez*, 2021-0458, p. 5, ___ So.3d ___, ___, 2021 WL 3361780, at *3 (quoting *Landiak*, 2005-0758, pp. 9-10, 899 So.2d at 543). Only if the party opposing the candidacy establishes a prima facie case that the candidate does not meet the domicile requirements for the office sought does the burden shift to the candidate to prove that he or she meets the domicile requirements. *See Graham v. Prevost*, 2015-1033, p. 4 (La. App. 4 Cir. 9/29/15), 176 So.3d 1142, 1145.

The documentary evidence that some Louisiana courts have considered in determining domicile are voter registration, driver's license, mail, location of possessions, and the presence or absence of a homestead exemption. *Suarez*, 2021-0248, pp. 11-13, ___ So.3d ___, ___, 2021 WL 3361780, at *6. *See also Sellar v. Nance*, 54, 617, p. 15 (La. App. 2 Cir. 3/1/22), 336 So.3d 103, 111 (citing *Sealy v. Brown*, 53,541, pp. 9-10 (La. App. 2 Cir. 2/4/20), 291 So.3d 290, 298); *Ogden v. Gray*, 2012-1314, p. 6 (La. App. 4 Cir. 9/11/12), 99 So.3d 1088, 1092-93 (citing *Landiak*, pp. 10-11, 899 So.2d at 543-44). For the intent element of domicile, Louisiana courts may also consider a party's testimony. *Ogden*, 2012-1314, p. 6, 99 So.3d at 1092. Additionally, this Court has explained "that a candidate can retain his childhood address as his domicile even if the candidate resides elsewhere." *Suarez*, 2021-0458, p. 10, ___ So.3d ___, ___, 2021 WL 3361780, at *5 (citing *Aguillard*, 2005-0466, pp. 5-6, 904 So.2d at 753). With these precepts in mind, we consider the trial court's August 3, 2022 judgment.

The narrow issue presented in this appeal is whether the trial court committed manifest error or was clearly wrong in its factual finding that Ms. Schindler failed to meet her burden of proof that Mr. Russ was not domiciled in Orleans Parish. Specifically, the Voter Information Report, which listed the Pauger

16

Address, had a voter registration date of October 28, 1996. *See Suarez*, 2021-0458, p. 6, ___ So.3d ___, ___, 2021 WL 3361780, at *3 (quoting *Landiak*, 2005-0758, p. 10, 899 So.2d at 543). Though the record also contains a subsequent December 23, 2020 Louisiana Voter Registration Application, which also lists the Pauger Address, we note that Mr. Russ did not sign this document and that it fails to demonstrate that Mr. Russ' voter registration ever switched from Orleans Parish after he initially registered to vote in 1996. Mr. Russ testified that he received mail at the Pauger Address. *See Suarez*, 2021-0248, p. 11, ___ So.3d ___, ___, 2021 WL 3361780, at *6 (citing *Aguillard*, 2005-0466, p. 2, 904 So.2d at 752). Additionally, Mr. Russ' driver's license lists the Pauger Address. *See Suarez*, 2021-0458, p. 6, ___ So.3d ___, ___, 2021 WL 3361780, at *3 (quoting *Landiak*, 2005-0758, p. 11, 899 So.2d at 543). While the issuance date is only April 10, 2022, we note that Ms. Schindler did not produce any evidence showing that Mr. Russ' previous driver's license showed a different address.

Also of import is the fact that the FHA Loan Modification Agreement provided that it "amends and supplements" a September 16, 2006 mortgage and note for the Oxford Address but did not contain the recitation from the Collateral Mortgage document that Mr. Russ was "domiciled and residing" in Jefferson Parish at the Oxford Address.

Further, the document from the Jefferson Parish Assessor's Office showed that Mr. Russ did not claim a homestead exemption on the Oxford Address. *See Landiak*, 2005-0758, p. 10, 899 So.2d at 543 n.5 (citing *Becker*, 2003-2493, 854 So.2d 864; *McClendon v. Bel*, 2000-2011 (La. App. 1 Cir. 9/7/00), 797 So.2d 700) (holding that "a decision to decline to take a homestead exemption in a . . . parish . . . other than the one the persons claims as his domicile has been considered as

17

evidence that the person did intend for his domicile to be in the other location.") *Cf. Russell*, 2000-2595, p. 6, 780 So.2d at 1052 (holding that the candidate was domiciled and resided at an address where he claimed a homestead exemption).

Moreover, Mr. Russ testified that the Pauger Address was his childhood home and that it was his domicile. Ms. Flemming also testified that Mr. Russ was routinely present at the Pauger Address. Both Mr. Russ and Ms. Flemming corroborated that he resided there and that his possessions were there. *See Suarez*, 2021-0458, p. 6, ___ So.3d ___, ___, 2021 WL 3361780, at *3 (quoting *Landiak*, 2005-0758, p. 11, 899 So.2d at 544). Additionally, contrary to the allegation in Ms. Schindler's Petition that Mr. Russ "remains currently domiciled with his wife and children" at the Oxford Address in Jefferson Parish, Mrs. Russ testified that she and her children lived on Crestmont Road, which is in Orleans Parish.

Considering that any doubt as to the qualifications of a candidate should be in favor of allowing the candidate to run, and reviewing the foregoing evidence and testimony in light of the deference owed to the trial court's findings of fact, we conclude that the trial court was not manifestly erroneous or clearly wrong in its factual finding that Ms. Schindler failed to meet her burden of establishing that Mr. Russ was not domiciled in Orleans Parish.

### DECREE

For the foregoing reasons, we affirm the trial court's August 3, 2022 judgment, which denied Ms. Schindler's "Petition Objecting to Candidacy of Derek T. Russ" for Judge, Municipal and Traffic Court, Division D, in Orleans Parish.

**AFFIRMED**